LAM FUNG YEN V. FRICK

---

LAM FUNG YEN v. FRICK, Immigration Inspector.

(Circuit Court of Appeals, Sixth Circuit. June 16, 1916.)

No. 2777.

1. ALIENS ⬅23(2)—CHINESE PERSONS—DEPORTATION—LABORERS.
    Where a Chinese person, who lawfully entered the United States as the minor son of a merchant, thereafter became a laborer, such fact will not deprive him of his right to remain in the country.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 77; Dec. Dig. ⬅23(2).]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. ALIENS ⬅️32(8)—CHINESE PERSONS—DEPORTATION.
    On application by a Chinese person for writ of habeas corpus against the immigration inspector, evidence *held* to warrant a finding by the inspector that such Chinese person was addicted to gambling when he left China, and that he entered the United States intending to make his living by gambling, and not by profitable industry.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⬅️32(8).]

3. ALIENS ⬅️32(12)—DEPORTATION—FINDINGS OF IMMIGRATION AUTHORITIES.
    Where supported by competent evidence, a finding by the immigration authorities with regard to an alien is conclusive on the courts.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. ⬅️32(12).]

4. ALIENS ⬅️21—CHINESE PERSONS—IMMIGRATION ACT.
    Th Immigration Act applies to aliens born in China, and the minor son of a Chinese merchant cannot lawfully enter the United States, if at that time he be a person likely to become a public charge.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 74; Dec. Dig. ⬅️21.]

5. ALIENS ⬅️49—IMMIGRATION ACT—CONSTRUCTION—"PERSONS LIKELY TO BECOME A PUBLIC CHARGE."
    The Immigration Act, excluding persons "likely to become a public charge," is not limited to paupers or those liable to become such, but includes those who will not undertake honest pursuits, or who are likely to become periodically the inmates of prisons, and so includes one who intends to make his living by gambling, instead of honest labor.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107; Dec. Dig. ⬅️49.]

6. ALIENS ⬅️49—DEPORTATION—PERSONS LIKELY TO BECOME A PUBLIC CHARGE.
    That petitioner, when he entered, was the son of a Chinese merchant, and as such liable to be supported by his father during minority, does not except him from the Immigration Act, excluding persons likely to become a public charge, where it was clear that at the end of his minority he was likely to become such a charge.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107; Dec. Dig. ⬅️49.]

7. ALIENS ⬅️49—DEPORTATION—RIGHT TO DEPORT.
    Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (Comp. St. 1913, § 4244), excludes persons likely to become a public charge; section 20 (Comp. St. 1913, § 4269) makes it the duty of the Secretary of Labor to cause to be deported at any time within three years after entry any alien who shall enter in violation of law, and as such become a public charge from causes existing prior to landing; while section 21 makes it the duty of the Secretary, when satisfied that an alien has been found in the United States in violation of law, to deport him. *Held*, that the act is not limited to persons who shall from existing causes become a public charge within three years after entry, but warrants the deportation of one who is likely thereafter to become a public charge.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107; Dec. Dig. ⬅️49.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Application by Lam Fung Yen for writ of habeas corpus against

G. Oliver Frick, United States Immigration Inspector in Charge. From an order dismissing the writ, applicant appeals. Affirmed.

F. H. Watson, of Detroit, Mich., for appellant.

J. E. Bland, Asst. U. S. Atty. of Detroit, Mich., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and EVANS, District Judge.

KNAPPEN, Circuit Judge. Appeal from an order discharging a writ of habeas corpus. Petitioner is an alien, born in China. In August, 1911, when nearly 19 years of age, he entered the United States as the minor son of a Chinese merchant domiciled in this country. He was arrested on warrant issued by the Secretary of Labor February 26, 1914 (within three years after entry), and after hearing before an immigration inspector was, by order of the Secretary of Labor, ordered returned to China, upon the grounds, first, that at the time of his entry into the United States he was a person likely to become a public charge within the meaning of sections 2, 20, and 21 of the Immigration Act of February 20, 1907, c. 1134, 34 Stat. 898, as amended by Act March 26, 1910, c. 128, 36 Stat. 263 (Comp. St. 1913, §§ 4244, 4269, 4270), and Act March 4, 1913, c. 141, § 3, 37 Stat. 737; and, second, that he was a laborer, and thus unlawfully within the United States under Chinese Exclusion Act April 27, 1904, c. 1630, 33 Stat. 394, 428, and so liable to be deported under section 21 of the Immigration Act.

[1] The second ground of deportation relied upon may be passed by in a few words: As the minor son of a Chinese merchant domiciled in this country petitioner was entitled to enter, unless excluded by the provisions of either the Chinese Exclusion Act or the Immigration Act. United States v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544; Lew Ling Chong v. United States (C. C. A. 6) 222 Fed. 195, 199, 137 C. C. A. 635. Petitioner was not a laborer when he entered the United States; if he is now liable to deportation as a laborer it is only because he has become such since his entry. Assuming that the small amount of work done by petitioner in a laundry has established his present status as a laborer (which is, to say the least, not very clear), we think the case falls within the decision of this court in Lew Ling Chong v. United States, supra, 222 Fed. at page 200, 137 C. C. A. 635, where it is held, in accordance with numerous authorities, that such labor, following a lawful entry in the capacity stated, did not destroy petitioner's right to remain.

[2, 3] The situation as affecting the charge that petitioner is a person liable to become a public charge is in narrow compass and the evidence undisputed. It appears by petitioner's testimony that during the 2½ years he had been in this country his profitable industry was practically negligible; that he first went to his father in Philadelphia, remaining there four or five weeks, then going to Chicago, largely with money provided by friends in his father's store, staying in the latter city more than a year, doing nothing; that he went to Detroit for a short time, and then returned to Chicago, where he remained until about a week before his arrest, when he went to Pontiac,

Mich., where also he was "doing nothing," except that when he was arrested he was helping "wrap up clothes in the laundry"; that he made his living by gambling, borrowing when out of money, and repaying when he had won. As he expressed it, "When I won, I paid back; but when I lost, I borrowed again." He says that he did not gamble in any one place; that "I gambled all over Chinatown." When arrested he had about $20, which he says was "money I had saved up from gambling in Chicago." He says "I never done any work," assigning as the reason that "no one wants to hire me to work," and that he had not learned for that reason. His father testified that when petitioner first came from China he gave him $35, that petitioner has never been to school in this country, that he refused to obey his father, and when scolded ran away. The father apparently feels little interest in petitioner. The latter testified that he sometimes gambled in China; that he "used to run a drug store, and it was burned, and I started to gamble a little"; that he did not make a living at it, for his father "sent money home to take care of the whole family."

We cannot say that the Secretary of Labor might not competently conclude from the evidence that petitioner was, when in China, addicted to gambling; that he came here without the intention of engaging in profitable industry, and intending to make his living, so far as necessary, by gambling. Taking into account the charge, the evidence, the findings, and the order of deportation, the Secretary of Labor may well have so concluded; and, as there was competent evidence supporting such conclusion, it is binding upon the courts. Lewis v. Frick, supra, 233 U. S. at page 300, 34 Sup. Ct. 488, 58 L. Ed. 967; Id., 195 Fed. 693, 696, 115 C. C. A. 493.

[4] The Immigration Act applies to aliens born in China, and notwithstanding petitioner's entry as the son of a Chinese merchant, if he was at the time a person likely to become a public charge he could not lawfully enter. Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165; United States v. Wong You, 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. 354. And see Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721.

[5] The more important question is whether the fact that petitioner entered the United States as a gambler, and as one having no other permanent means of support, actual or contemplated, makes him a person "likely to become a public charge" within the meaning of the Immigration Act.

It seems clear that the term "persons likely to become a public charge" is not limited to paupers or those liable to become such; "paupers" are mentioned as in a separate class. In United States v. Williams (D. C.) 175 Fed. 274, 275, the term "persons likely to become a public charge" is construed as including, "not only those persons who through misfortune cannot be self-supporting, but also those who will not undertake honest pursuits, and who are likely to become periodically the inmates of prisons." We think this a reasonable construction. "A statute excluding paupers or persons likely to become a public charge is manifestly one of police and public security." The Japanese Immigrant Case, supra, 189 U. S. at page 97, 23 Sup. Ct. at page 613 (47 L. Ed. 721). Inmates of jails and prisons are for the

time being public charges, and we think it open to conclusion by reasonable minds that those who will not work for a living, but rely for that purpose upon gambling, are more likely than citizens following the ordinary pursuits of industry to become, at least intermittently, public charges. Such conclusion does not involve the proposition that gambling in any and every form is necessarily immoral; but public policy generally, as disclosed in statutes of varying nature, regards professional gambling at least as within the domain of police supervision and public security.

We see nothing in the suggestion that Chinese gamblers and highbinders have been held to be laborers within the Chinese Exclusion Act. See United States v. Ah Fawn (D. C.) 57 Fed. 591. The basis of that holding was that the term "laborers" was intended to exclude broadly all Chinese, except those who entered the United States "for purposes of teaching, studying, mercantile transactions, travel or curiosity."

[6] The fact that petitioner was a minor when he entered, and so liable to be supported by his father during the remaining period of minority, does not, in our opinion, take the case out of the statute; for such minority would continue but for a limited period.

We therefore conclude that it was open to the Secretary of Labor to find that petitioner was at the time of his entry into the United States a person "likely to become a public charge," excluded by section 2 of the Immigration Act, and that petitioner had thus entered the United States in violation of law, and that we are not at liberty to disturb this finding. Does the right to deport follow?

[7] Section 20 of the act makes it the duty of the Secretary of Labor to cause to be deported to the country whence he came, at any time within three years after the date of his entry, "any alien who shall enter the United States in violation of law." The language of section 20, however, is that "any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing" shall be so deported; and petitioner contends that the right to deport those unlawfully entering because *likely to* become public charges is limited to those who *actually* become such within three years from the date of entry. If this is the correct construction of the act, petitioner is not subject to deportation, for he is not shown to have actually become such public charge.

There is force in the contention that the special designation of "such as become public charges from causes existing prior to landing" excludes from the general language "any alien who shall enter the United States in violation of law" those who did not actually become such public charges. But we think the section should not be so construed. Section 21 of the same act expressly makes it the duty of the Secretary of Labor, when satisfied that an alien "has been found in the United States in violation of" the act, to deport him, and this without any mention of his actually becoming a public charge.

The various amendments of the act have tended to enlarge rather than restrict the rights of exclusion and deportation; and, especially in view of the language of section 21, it is not lightly to be presumed that Congress intended to withdraw from the general right of de-

porting those not entitled to enter because likely to become public charges, all such as should not actually become such within three years. Congress may well have intended to include as separate classes, subject to deportation, those who *become* public charges within three years, from *causes existing* prior to landing, and those who, at the time of entry, were *likely to become* public charges; in other words, to have intended a distinction between a possibility (or even a liability), to become a public charge, and an *actually* existing *likelihood* of such result. As a matter of evidence, the former class might not unnaturally be held prima facie to include all who become public charges during that period without the intervention of a new or unexpected cause. It can scarcely be presumed that Congress intended deliberately to take away the right of deporting the undesirable class of citizens "likely to become a public charge," unless such likelihood ripened into fact within three years. An illustration of the liberality with which the provisions of the Immigration Act have been construed is found in Lewis v. Frick, supra.

It is worthy of note that in the Japanese Immigrant Case, supra, an order deporting an alien under section 11 of the Immigration Act of March 3, 1891 (26 Stat. 1084, c. 551) as a pauper and a "person likely to become a public charge" was sustained, although the point here considered does not seem to have been there raised. The language of section 11 of the act of 1891 is, however, substantially the same as the language we have quoted from section 20 of the existing act. The fact that in the case referred to the deported alien had entered clandestinely is not, in our opinion, enough to distinguish, for the deportation was based upon the fact that the alien entered "in violation of law," as is the case under the existing act; and an admission after actual inspection and inquiry is not an adjudication of immunity from deportation. Pearson v. Williams, 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029.

In our opinion petitioner was within the deportation provisions of the Immigration Act, and the order of the District Court dismissing the writ of habeas corpus must be affirmed.

⬬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes