## UNITED STATES v. LEW LOY.

### (District Court, N. D. Ohio, E. D. April 22, 1918.)

### No. 8918.

1. ALIENS ⬦═23(2)—CHINESE PERSONS—DEPORTATION.
    Where the entry of a Chinese person as a merchant or student is valid, he does not lose his right to remain because he subsequently becomes a laborer.

2. ALIENS ⬦═23(2)—CHINESE PERSONS—INFERENCES AS TO ENTRY.
    Where a Chinese person is admitted as a student, merchant, or minor child of a merchant, the weight to be accorded the inference from his immediate adoption of the occupation of a laborer depends on the circumstances, etc.

3. ALIENS ⬦═32(5)—CHINESE PERSONS—CERTIFICATE OF ADMISSION.
    Where a Chinese person, admitted as the minor child of a merchant, received a regular certificate of admission, the government, in subsequent deportation proceedings based on the fact such person had become a laborer, has the burden of showing that the entry was not for the purpose of conserving the family relation and following the occupation of a merchant.

4. ALIENS ⬦═32(8)—CHINESE PERSONS—CERTIFICATE OF ADMISSION—EVIDENCE TO OVERTHROW.
    The effect of a certificate of admission issued to a Chinese person as the minor son of a merchant can be destroyed only by substantial evidence, and cannot be overthrown by a mere suspicion that such person entered to become a laborer.

5. ALIENS ⬦═32(8)—CHINESE PERSONS—DEPORTATION—EVIDENCE.
    In proceedings to deport a Chinese person, who was admitted as the minor son of a merchant, but subsequently became a laborer, evidence *held* insufficient to warrant deportation, not showing that such person entered intending to become a laborer.

Deportation proceedings by the United States against Lew Loy. On appeal from a judgment of deportation rendered by a United States commissioner. Judgment reversed, and defendant discharged.

F. B. Kavanagh, Asst. U. S. Atty., of Cleveland, Ohio.

White, Johnson, Cannon & Neff, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This is an appeal from a judgment of deportation rendered by a United States commissioner on a former hearing. The commissioner's order was affirmed, and on appeal to the Circuit Court of Appeals this judgment of affirmance was reversed, and the case was remanded for a new trial. 242 Fed. 405, —— C. C. A. ——. At this new trial additional evidence has been introduced. Upon consideration of all the evidence, I find the following facts:

Lew Loy is a Chinese person, and the son of Lew Fook Shing. The father, in October, 1910, when defendant entered the United States, was a merchant resident in the United States. He was then, and from October 6, 1907, had been, interested in and connected with a store at No. 1261 Broadway, Oakland, Cal., which business was later removed to No. 527 Twelfth street, Oakland, Cal., and was there continued until a recent date. This appears from the testimony of de-

⬦═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fendant, his father, and R. J. Faneuf, superintendent of the United States post office at Oakland, Cal.

Defendant arrived at the port of San Francisco on the steamship Mongolia about October 15, 1910. He was not permitted to land until about a month later, during which time the United States immigration officers investigated his right to be admitted. Witnesses were brought forward, who, it must be held, established to the satisfaction of these officials the defendant's status as a minor son of Lew Fook Shing, and the latter's status as a Chinese merchant lawfully in the United States. He was thereupon permitted to enter, and a proper certificate was issued to him, bearing date of December 12, 1910. Attached to this certificate is a photograph plainly recognizable, notwithstanding the lapse of time, as the defendant. This certificate states defendant's age as being 20. On this hearing defendant's father testifies that his son was really only 19, as the age thus given is according to the Chinese rule of counting ages, which, it seems, treats a child as one year of age as soon as he is born, and two years of age at the next birthday of the Chinese emperor, even though that birthday should arrive one or two months after the birth of the child. I accept as true this statement, first, because the photograph attached to the certificate is obviously that of an immature youth; and, second, the father's testimony in my presence convinced me that he was a witness entitled to full credit.

About a year later a younger son, named Lew Horn, arrived at the port of San Francisco, was also admitted as the minor son of a resident Chinese merchant, and is now, according to the testimony, at Los Angeles, Cal., engaged in business, not as a laborer, but as a Chinese merchant.

These two sons are the only children of Lew Fook Shing. The mother remains in China; and, in explanation, Lew Fook Shing testifies that she is a bound-foot woman, that she has a home, that he at one time furnished her with $2,000 in money, and has since sent her money to aid in her support; that, because she is a bound-foot woman, it is difficult for her to get about; that she likes to be with relatives, and is adverse to coming aboard a steamer.

Defendant, upon his arrival and after the delay in San Francisco, incident to establishing his right to enter, went to Oakland, Cal. There is some uncertainty in the testimony as to how long he remained in Oakland and San Francisco before coming to Cleveland, Ohio. Defendant, when first arrested, April 30, 1914, at Cleveland, Ohio, was immediately interrogated by the immigration inspector, and at that time answered the question, "How long did you stay in Oakland?" "About one or two months; then I came here." Upon the former hearing he said:

"I stayed in San Francisco about two months to learn the business, and then went to Oakland and stayed with my father about four months, and left him and came to Cleveland."

His father on this hearing goes into greater detail, and says that when his son was first admitted he came to his store and lived with his father at Oakland for a few months, then he went to San Fran-

253 F.—50

cisco and stayed at the Fook Weh store at No. 707 Grand avenue, for the purpose of learning the business, and attended school. Then, about two months later, he returned to his father's store at Oakland, remaining there some two months more, before his departure for Cleveland.

The father did not testify at the former hearing, but his statement was taken ex parte before an immigration inspector at San Francisco, and was introduced on behalf of the government. He was not asked how long his son had remained with him in Oakland, nor how long he remained in San Francisco. He does say that his son was engaged in learning business after his arrival and before his departure for the East.

I believe and find that the father's statement of his son's movements before coming East is true. The unrefreshed recollection of the son, made immediately upon his arrest, does not deprive his later testimony, or that of his father, of credibility, especially as other inaccuracies to the defendant's prejudice in matters of time appear in the same statement.

Defendant came to Cleveland, Ohio, not later than six months after his arrival in the United States. He and his father say that he came in company with two Chinese merchants and family friends named Chin Check Weh and Low Lim, and that he came for the purpose of finding a suitable location and engaging in business. He has not, since his arrival in Cleveland, been engaged in or connected with any mercantile business, but has lived with the owner of a laundry, and such labor as he has performed has been in and about that laundry; hence the government's contention that he did not in fact and in good faith enter as the minor son of a Chinese merchant, but really for the purpose of engaging in the occupation of a laborer.

The government's evidence, other than statements of defendant and his father, shows only that defendant had worked in the laundry of Ben Hop Lee, 10613 Euclid avenue, during a period of less than one year prior to his arrest. The witnesses, William Graham, John G. Harvie, W. I. Rich, Frank M. Potter, Franklin J. Savesky, George F. Wilson, Joseph Francis, and H. T. Grubbs, testified June 4, 1915. None of them had seen the defendant more than two or three times; none of them fix the time at which he was seen in the laundry at work earlier than 13 months prior to this date. The others give dates ranging from 2 or 3 months to 6 months. He was apparently, as testified to by these witnesses, in working clothes, sometimes ironing, other times handing out laundry parcels, and apparently occupying the same relation to the business as any other Chinese person there employed. Defendant was arrested April 30, 1914, and practically all of the work thus done was at a date later than his arrest.

An inspection of defendant's hands, made by the United States commissioner at the hearing May 22, 1914, and at the former hearing June, 1915, showed that the defendant's hands were calloused, as those of a person doing manual labor. The defendant's movements from the time he left Oakland, shortly after his arrival, until the time covered by the foregoing testimony, depend on his statements, those of his father, and Loo Way, owner of the laundry in question.

Father and son have testified that the son left Oakland with the two Chinese merchants, as already stated; that when he left Oakland no definite destination was in the mind of any person; that these Chinese persons then believed that the East afforded good prospects for engaging in business; that the father furnished the son with $200 in money and intrusted him to the supervision primarily of Loo Lim. The father next heard from the son in Cleveland. All witnesses agree that he immediately took up his residence at the Ben Hop Lee laundry. About a year later Loo Lim left Cleveland and went to Boston, later returning to Cleveland, and in 1913 returning to China. Chin Check Weh remained longer in Cleveland, but within a period of 2 years he disappeared; he was not produced at the trial, and his whereabouts, counsel state, are unknown. The father says he was advised that his son had been left with a friend of Chin Check Weh.

The son testifies that he made inquiries and investigations after his arrival in Cleveland, relating to his project of engaging in business, but admits he never engaged in any mercantile business. The evidence is inconclusive and unsatisfactory touching his efforts to engage in business.

I agree with the finding made at the former hearing that defendant's statement that he remained continuously at this laundry until the time of his arrest, without laboring on his own account, and depending exclusively upon remittances from his father for support, is too improbable to be believed. The greater probability is that at some time, either immediately after his arrival or more remotely he did engage in manual labor, and that such labor was in and about the Ben Hop Lee Laundry. This finding of fact, however, is not, in my opinion, controlling in the disposition of this case.

The father's testimony on this hearing agrees with the son's testimony on the former hearing, in that they say $200 was given by the father to the son when he started East, and that the father had sent him money from time to time thereafter, aggregating from $70 to $90 per year. The ex parte statement of the father, introduced on behalf of the government at the former hearing, does not mention the $200, and does say that $80 or $90 was all the money he had sent to his son. The father in the ex parte statement was not inquired of as to the money given to his son at his departure, and, in explanation of the other statement, says that he understood the question asked and to be answered was how much money he had sent his son this year. He also testifies to frequent communications by letter during this period of absence, but no letters are introduced.

The father impressed me as a witness worthy of credit, and as a person of the mercantile, and not of the laboring, class. His appearance and manner of testifying were substantial evidence of this conclusion. His intelligence was obvious, notwithstanding the difficulty of interrogating him through an interpreter. The son's appearance also impressed me as that of an intelligent, clean-cut, young Chinese person, not of the laboring class.

From these facts, the ultimate question to be determined is whether or not defendant's entry was in good faith in the interest of the re-

lationship of a minor son of a resident Chinese merchant, or was in bad faith and in reality as and for the purpose of immediately becoming a laborer, in evasion of the Chinese Exclusion Act. This ultimate conclusion must be drawn from the facts above found—in other words, is an inference from the other facts.

[1] The law is settled that if the entry of the Chinese person is valid—that is, as a student or merchant—he does not lose his right to remain because subsequently thereto he changes his occupation and becomes a laborer. Liu Hop Fong v. United States, 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888; Lew Ling Chong v. United States (6 C. C. A.) 222 Fed. 195, 137 C. C. A. 635; Lam Fung Yen v. Frick (6 C. C. A.) 233 Fed. 393, 395, 147 C. C. A. 329, Ann. Cas. 1917C, 232; Lew Loy v. United States (6 C. C. A.) 242 Fed. 405, 155 C. C. A. 181; Lui Hip Chin v. Plummer (9 C. C. A.) 238 Fed. 763, 151 C. C. A. 613.

[2-5] The inquiry, then, is whether or not, at the time of entry, the defendant was a minor son of a Chinese merchant, and, if a minor son of a Chinese merchant, was his real purpose then to obtain entry with a view to becoming a laborer? It is conceded that he was the minor son of a Chinese merchant. The inference that his entry was unlawful and in bad faith results exclusively from his conduct after he departed from Oakland and arrived in Cleveland. Cases are cited in which it is said that if a Chinese person seeks admission as a merchant, and immediately after admission becomes and continues a laborer, this is strong evidence tending to show that he came into the United States as a laborer. United States v. Foo Duck (9 C. C. A.) 172 Fed. 856, 97 C. C. A. 204; Lew Loy v. United States, supra.

The weight to be accorded the inference from immediate adoption of the occupation of a laborer depends upon the circumstances. If the person thus entering obtains admission as a student or merchant, and immediately engaged in the employment of a laborer, great, if not controlling, weight should be attached thereto. If, however, such admission is obtained as the minor son of a Chinese merchant, and, in point of fact, he is such minor son of a Chinese merchant, the inference is less strong. If the minor is several years under age, the inference probably could not be made. Likewise, if of age, the force of the inference diminishes in proportion as the change of occupation is remote from the date of entry.

In the present case the defendant was at least 2 years under age, as I have already found, and for 6 months after his arrival he was domiciled with his father, or in close proximity to him, and was engaged in studying and learning business conditions. In this situation there is not such close proximity of time between his admission, arriving at full age, or engaging in labor, as to warrant a strong inference that his purpose in coming to the United States and obtaining admission was to engage in manual labor. He did so engage at some time after his arrival in Cleveland; but another explanation, more probable than fraudulent entry, suggests itself for this conduct. Considering the father's undoubted status here and in China as of the mercantile class, the greater probability is that both father and son in good faith

entertained the belief, when defendant was admitted and for some period of time after his departure for the East, that the son would adopt and follow his father's calling. Their obvious intelligence and apparent superiority to the ordinary Chinese person impresses me with the fact that defendant did not purposely and intentionally drop immediately into the laboring class, but that his doing so was the result of other conditions and circumstances.

My conclusion is that defendant entered lawfully and in good faith as the minor son of a Chinese merchant. This conclusion is emphasized by another consideration. The immigration officials at the port of San Francisco, upon his arrival, must be held to have investigated carefully his status and right to enter, consuming therein not less than one month's time, and after doing so they found that he was entitled to be admitted and issued to him the usual certificate. His right to enter or to remain is not called into question until $3\frac{1}{2}$ years later, and then only because of fraud practiced in procuring admission, and not for any offense against the laws of the United States. This certificate of admission, having been produced on this trial, casts upon the government the burden of showing that the entry was not in fact for the purpose of conserving the family relation and following the occupation of a merchant, but for the purpose of immediately becoming a laborer. Liu Hop Fong v. United States, supra; Lew Ling Chong v. United States, supra; Ong Chew Lung v. Burnett (9 C. C. A.) 232 Fed. 853, 147 C. C. A. 47; Wong Yee Toon v. Stump (4 C. C. A.) 233 Fed. 194, 147 C. C. A. 200; Lam Fung Yen v. Frick, 233 Fed. 393, 147 C. C. A. 329, Ann. Cas. 1917C, 232; Lew Loy v. United States, supra; Lui Hip Chin v. Plummer, supra.

This burden the government has not sustained. Substantial evidence should be produced in order to destroy the effect of the certificate. It is not sufficient that a mere suspicion be aroused, but substantial evidence is necessary to destroy the force and effect of the original decision of the immigration officials and the certificate issued by them. If the immigration officials decide that he is not entitled to admission, the rule seems settled that the courts will not disturb such finding, if it is in any way supported by the testimony. Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082; Fok Young Yo v. United States, 185 U. S. 296, 22 Sup. Ct. 686, 46 L. Ed. 917; United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040.

In Liu Hop Fong v. United States, supra, a Chinese person had obtained admission as a student, and proofs show that almost immediately upon arrival he became a laborer, and while, according to this fact its due weight, the Supreme Court of the United States reversed the United States commissioner and the District Court for ordering deportation on the ground that it was not sufficient to destroy the force and effect of the certificate.

In Wong Yee Toon v. Stump, supra, the Circuit Court of Appeals of the Fourth Circuit, on appeal in a habeas corpus case, reversed the judgment of the commissioner and of the District Judge, where it appeared that the minor son had been admitted after investigation

and was in possession of a certificate, although he began work for a laundry within 2 months after his admission.

In Lew Ling Chong v. United States, supra, the Circuit Court of Appeals of this circuit reversed a judgment of the commissioner and the District Court ordering deportation in a case in which it appeared that the Chinese person had been admitted as a minor son of a Chinese merchant, and was in possession of a certificate, although the facts appear to be at least as strong as in the present case.

An order will be entered, reversing the commissioner, and discharging the defendant.