## UNITED STATES ex rel. FREEMAN v. WILLIAMS.

(District Court, S. D. New York.   January 5, 1910.)

1. HABEAS CORPUS (§ 23*) — ALIENS — DEPORTATION PROCEEDINGS — JURISDICTION.

Where an alien, seeking to enter the United States, was ordered deported by the Secretary of Commerce and Labor, a District Judge has no jurisdiction to set aside such order on habeas corpus, unless the Secretary violated the statute in respect to all of the grounds on which the deportation was based.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 23.*]

2. HABEAS CORPUS (§ 92*)—DEPORTATION PROCEEDINGS—REVIEW—JURISDICTION.

A District Judge, on habeas corpus to review a deportation order, can at most consider only whether the conclusion of the immigration authorities was without any evidence to support it.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 83; Dec. Dig. § 92.*]

3. ALIENS (§ 49*)—DEPORTATION—GROUNDS—"LIKELY TO BECOME A PUBLIC CHARGE."

The provision of the statute for the deportation of aliens "likely to become a public charge" is not limited to likelihood to become a pauper, but extends to likelihood to become periodically inmates of prisons as a result of crime.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107; Dec. Dig. § 49.*

For other definitions, see Words and Phrases, vol. 5, p. 4163; vol. 8, p. 7707.]

4. ALIENS (§ 40*)—DEPORTATION—STATUTES—CONSTRUCTION.

The construction of the provision of the statute for the deportation of aliens likely to become a public charge to include persons likely to become criminals does not conflict with the provision for exclusion of an alien convicted of crime.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 40.*]

5. ALIENS (§ 54*) — DEPORTATION PROCEEDINGS — WARRANT — RECITALS — GROUNDS.

Neither the immigration act nor the promulgated regulations require that a warrant of arrest in deportation proceedings shall state the alleged grounds on which deportation will be demanded.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

Habeas Corpus.   Proceeding by the United States, on the relation of Robert Freeman, against William Williams, to obtain relator's discharge from an order directing his deportation as an alien seeking to enter the United States and likely to become a public charge.   Writ quashed, and relator remanded.

The relator was arrested upon a warrant issued by the Secretary of Commerce and Labor, charging him with having been found in the United States in violation of law, in that he was an alien and had been convicted or ad-

---

mitted having committed, prior to landing, a felony or other crime or misdemeanor involving moral turpitude. He was taken before the Commissioner of Immigration at Ellis Island, a hearing was given him, and the proceedings were then sent to the Secretary of Commerce and Labor, who, after full consideration, ordered his deportation. He has procured a writ of habeas corpus from this order. Before the Commissioner evidence was introduced which would justify the inference, first, that he is an alien; second, that he has twice been convicted of an assault in Great Britain, once upon a police constable; third, that he has been indicted for larceny in England, and that he has absconded; fourth, that he has committed robbery of a large sum of money in Austria; fifth, that in this country he fraudulently sold false gems to persons here while on a former visit; sixth, that he consorted with a gang of Australian thieves in Europe. Upon the hearing, by advice of his counsel, he refused to answer any questions or make any explanation of the charges against him. He has been ordered deported on three grounds: First, because prior to the time of his entry he had been convicted of one or more misdemeanors involving moral turpitude; second, because he had admitted the commission of one or more crimes involving moral turpitude before the time of his entry; third, because he was as at the time of entry a person likely to become a public charge.

Hugh Govern, for relator.
Henry Wise, for the United States.

HAND, District Judge (after stating the facts as above). If the Secretary did not violate the statute in respect of all three of the three grounds given for his deportation, I have no jurisdiction. The precise limit of the jurisdiction to review the sufficiency of the evidence I need not consider. At most it can go no further than to inquire whether the conclusion of the authorities was without any evidence whatever to support it. I do not say that the jurisdiction goes so far, but it certainly goes no further.

In the case at bar there was shown ample reason to suppose that the relator was a person of habitual criminal propensities. I am satisfied, indeed, that there was extreme likelihood that he would, if he remained here, soon be concerned in crime, and, if evidence could be found, put into prison. Even while he was not imprisoned, he would live at the expense of any community in which he remained. The sole question is whether the words of the statute, "likely to become a public charge," must be limited to the likelihood of his becoming a pauper. Probably this was the primary meaning of the words, but in modern times many persons have come to regard crime and pauperism as analogous facts in the life of a community, and, without in the least intending necessarily to impose such a sociological purpose upon the classification of Congress I believe that the statute should be reasonably construed as including, not only those persons who through misfortune cannot be self-supporting, but also those who will not undertake honest pursuits, and who are likely to become periodically the inmates of prisons. Literally taken, the words in question certainly cover their case. They are surely public charges, at least during the term of their incarceration. Whether they are such while they are living dishonestly, though unconvicted, it is not necessary to determine.

So to construe the act is not to decide that such persons may be convicted and punished upon loose considerations of their probable propensities. The issue is wholly of the relator's right to enter the country, and that right, as has been so often said, is entirely the creation

of Congress. Nor does the construction conflict by implication with the other subdivision of section 2 which makes a ground of exclusion the conviction of crime of an immigrant alien, or his admission that he has committed a crime. That subdivision contemplates a single delinquency; but here the Secretary has concluded from the evidence that the relator's habitual propensities so dispose him to a criminal life that he will be likely to resume it.

It is true that the warrant did not specify this ground of deportation; but the relator was advised at the outset of the hearing that the authorities meant to rely upon it as a ground of deportation, and I find no requirement, either in the act or in the promulgated regulations, that the warrant must state the alleged grounds.

Having determined that there was one adequate ground for his exclusion, I shall not consider the other points which the relator raises. It is not necessary in this view to decide whether the relator's silence upon the hearing was an admission which should be used against him. The evidence was adequate, without such admissions, to determine that he was likely to become a public charge; nor does it appear that upon that question the admissions were used against him. I do not mean to be understood as deciding whether they could or could not be so used, that being unnecessary to the determination of this proceeding.

Writ quashed, and relator remanded.