**UNITED STATES ex rel. MEDICH v. BURMASTER, Immigration Inspector.**

Circuit Court of Appeals, Eighth Circuit. January 25, 1928.

No. 7714.

1. Aliens ⊛53—Alien, going to Canada and re-entering United States same day, became subject to deportation for crime involving moral turpitude committed within previous five years (Immigration Act 1917, § 19 [8 USCA § 155]).

Where alien, on about November 1, 1924, or June 1, 1924, while engaged in taxicab business, transported company of teachers to place in Canada, and returned to United States on the same day, such absence and re-entry made him subject to deportation, under Immigration Act 1917, § 19 (8 USCA § 155), within five years for crime involving moral turpitude committed in Minnesota on April 24, 1924, where he first came to United States in 1913, since period in which an alien may be deported for commission of an offense involving moral turpitude runs, not from time when he first entered country, but from his most recent entry, even though that entry be from temporary and brief visit to foreign country, made with intention to return here.

2. Aliens ⊛53—Crime of concealing assets from trustee in bankruptcy involved "moral turpitude," within Immigration Act 1917, § 19 (8 USCA § 155).

Where alien was convicted of having concealed assets from trustee in bankruptcy, crime was one involving "moral turpitude," within meaning of Immigration Act 1917, § 19 (8 USCA § 155), for which he could be deported within five years after entry.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Moral Turpitude.]

3. Aliens ⊛53—Immigration Act, relating to deportation, applies to alien committing crime within five years before entry and at any time thereafter regardless of whether admission of crime is before or after entry (Immigration Act 1917, § 19 [8 USCA § 155]).

Immigration Act 1917, § 19 (8 USCA § 155), relating to deportation of aliens, applies to any alien who committed crime within five years before his entry, and at any time thereafter, whether before or subsequently to his entry, he admits crime, since it is the crime that debars, and not mere admission.

4. Aliens ⊛54(9)—That alien confessed crime and was incarcerated supported allegation in warrant of deportation that he would likely become public charge (Immigration Act 1917, § 19 [8 USCA § 155]).

Fact that alien confessed to crime punishable by imprisonment in federal prison, and fact that he was actually incarcerated for period of 18 months, was sufficient to support allegation in warrant of deportation that he was likely to become public charge, making him subject to deportation under Immigration Act 1917, § 19 (8 USCA § 155).

5. Aliens ⊛54(10)—Alien, informed of purpose of hearing for warrant of deportation, stating he waived right to representation by counsel, and having opportunity to inspect warrant and evidence, was given fair hearing (Immigration Act 1917 [Comp. St. §§ 959, 960, 4289¼a–4289¼u]).

Where, at hearing for warrant for alien's deportation for entry in violation of Immigration Act 1917 (Comp. St. §§ 959, 960, 4289¼a–4289¼u), alien was informed of purpose of hearing, warrant of arrest was read to him, and its contents carefully explained, and he was given an opportunity to inspect warrant and evidence on which it was issued, and was advised of right to be represented by counsel, and stated he had no money to secure lawyer, and that he waived right to representation by counsel, and was ready to proceed with hearing, and his testimony was freely given, hearing was fairly conducted.

6. Aliens ⊛39—Congress has plenary power to prescribe terms of admission into United States for aliens.

Congress has plenary power to prescribe terms of admission into the United States for all aliens.

Appeal from the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Habeas corpus proceeding by the United States, on the relation of Nick Medich, against Alvin A. Burmaster, Inspector in Charge of Immigration Department, Duluth, Minnesota. Writ discharged, and relator appeals. Affirmed.

John A. Cadigan and Peter B. Cadigan, both of Superior, Wis., for appellant.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and Leland W. Scott, Asst. U. S. Atty., of Washington, D. C., for appellee.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

REEVES, District Judge. Held in custody pursuant to an order of deportation as an alien and a violator of the immigration law, appellant seeks his discharge by writ of habeas corpus. He was cast in the trial court and appeals.

It is charged by the warrant of deportation that the appellant entered the United States at the port of International Falls, Minn., on or about the 1st of November, 1924 (appellant says June 1, 1924) and that such entry was in violation of the Immigration Act of February 5, 1917 (Comp. St. §§ 959, 960, 4289¼a–4289¼u) in this, to wit:

"That he was a person likely to become a public charge at the time of his entry, and that he has been convicted of or admits the commission of a felony * * * involving moral turpitude, to wit, concealment of as-

sets in bankruptcy, prior to his entry into the United States."

The evidence was that the entry of November 1, or June 1, 1924, was a re-entry. He first came to the United States in the year 1913. His port of entry then was New York. He went thence to Minnesota, where he found employment. In 1921 he engaged in the grocery business at Kinney, Minn., and subsequently carried on the same business at Buhl, Minn. He quit said business on September 17, 1923. In October, 1923, he filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. Thereafter, at the December, 1924, term of the District Court for Minnesota, he was indicted by a grand jury for having concealed assets from the trustee in bankruptcy. The offense, it was charged, was committed on the 25th day of April, 1924.

To this charge appellant entered a plea of guilty and on January 13, 1925, he was sentenced to 18 months in the federal prison at Leavenworth, Kan. During his residence following his first entry, he filed declarations of citizenship, which he never completed. On or about the 1st day of November, 1924, or, as claimed by appellant, on June 1, 1924, and before his indictment, while engaged in the taxicab business at Kinney, Minn., he transported a company of teachers from that place to Ft. Frances, in the Dominion of Canada, via International Falls. He remained at Ft. Frances a very short time, returning to the United States on the same day. His re-entry was, as stated, at International Falls. While imprisoned at Leavenworth, the Secretary of Labor issued his order for deportation. Appellant challenges the jurisdiction of the Secretary of Labor to issue the warrant of deportation, and, moreover, he asserts unfairness and illegality in the hearing on the warrant of arrest.

1. It will be observed that the crime confessed by appellant was committed on the 25th day of April, 1924, at Buhl, Minn. His re-entry was either June 1 or November 1, 1924. The crime, therefore, was committed prior to his re-entry. Two questions are here raised:

[1] (a) Was there such an absence and re-entry as to bring the appellant within the inhibition of the statute against violations of the law by an alien within five years after entry?

The Supreme Court of the United States, in the case of Lewis v. Frick, 233 U. S. 291, loc. cit. 297, 34 S. Ct. 488, 491 (58 L. Ed. 967) in referring to an alien previously domiciled in the United States, as in the instant

case, announced the principle "that, if he departed from the country, even for a brief space of time, and on re-entering brought into the country a woman for the purpose of prostitution or other immoral purpose, he subjected himself to the operation of the clauses of the act that relate to the exclusion and deportation of aliens, the same as if he had had no previous residence or domicile in this country."

In Lapina v. Williams, 232 U. S. 78, loc. cit. 91, 34 S. Ct. 196, 200 (58 L. Ed. 515) in dealing with a re-entry case, the court said: "Upon a review of the whole matter, we are satisfied that Congress in the act of 1903 [32 Stat. 1213] sufficiently expressed, and in the act of 1907 [34 Stat. 898] reiterated, the purpose of applying its prohibition against the admission of aliens, and its mandate for their deportation, to all aliens whose history, condition, or characteristics brought them within the descriptive clauses, irrespective of any qualification arising out of a previous residence or domicile in this country." In the latter case the alien had "gone abroad for a temporary purpose and with the intention of returning."

Pursuant to the foregoing, it has been held in a large number of cases that the period in which an alien may be deported for the commission of an offense involving moral turpitude is to run, not from the time when he first entered the country, but from his most recent entry, even though that entry be from a temporary and brief visit to a foreign country which was made with the intention to return here. Ex parte Piazzola (D. C.) 18 F.(2d) 114; United States ex rel. v. Flynn (D. C.) 17 F.(2d) 524; United States ex rel. Ciccerelli v. Curran (C. C. A.) 12 F.(2d) 394.

[2] (b) Did the crime, committed by appellant, involve moral turpitude? In seeking relief from the burden of his debts, appellant employed the bankruptcy laws of the government. These laws required him to list his debts and schedule his assets and deliver the latter to the trustee in bankruptcy. This was a solemn duty resting upon him. He invoked the aid of a beneficent law, but violated its requirements. Confessedly he withheld and concealed assets which he knew belonged to the trustee for distribution to his creditors. This was done contrary to honesty and good morals, and was shameful wickedness on his part, and thus involved moral turpitude. In re Disbarment of Coffey, 123 Cal. 522, 56 P. 448; In re Kirby, 10 S. D. 322, 414, 73 N. W. 92, loc. cit. 94, 39 L. R. A. 856, 859.

[3] 2. It is argued by the appellant that sec-

tion 19 of the Act of February 5, 1917 (8 USCA § 155), relating to the subject of immigration, only applied to those aliens "who admit the commission" of a felony *prior* to the entry into the United States, and that as the admission was made *subsequently* to the entry appellant is not within the inhibitions of the statute. We do not so construe the statute. A proper construction would make the statute applicable to any alien who had committed the crime within 5 years *before* his entry and at any time thereafter, whether before or subsequently to his entry he admits the crime. It is the crime that debars, and not the mere admission.

[4] 3. The fact that the appellant confessed to a crime punishable by imprisonment in the federal prison, and the very fact that he was actually incarcerated for a period of 18 months was sufficient to support the allegation in the warrant of deportation that he was likely "to become a public charge." Ex parte Horn (D. C.) 292 F. 455; Ex parte Tsunetaro Machida (D. C.) 277 F. 239, loc. cit. 241; Ex parte Fragoso (D. C.) 11 F. (2d) 988; Ex parte Reeves (D. C.) 292 F. 766; Ex parte Britten (D. C.) 293 F. 61; United States v. Williams (D. C.) 175 F. 274.

[5] 4. The only other question in the case is whether the hearing given the appellant by the Secretary of Labor was unfair and illegal. Appellant was informed of the purpose of the hearing. The warrant of arrest was read to him and its contents carefully explained. He was given an opportunity to inspect the warrant and the evidence upon which it was issued. Moreover, he was advised of his right to be represented by counsel and in answer to the question, "Do you desire to obtain the services of a lawyer?" he replied, "I have no money to secure a lawyer; I wrote to my relatives and friends to send me money to secure a lawyer, but they have not done so." Thereupon the following question was propounded, to which an affirmative answer was returned: "Are you willing to waive your right to representation by counsel, and, if so, are you now ready to proceed with this hearing?" Plaintiff never complained of any unfairness, and his testimony, both at the deportation hearing and at the trial of this case, was frankly and freely given. The hearing was fairly conducted. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221; Gambroulis v. Nash (C. C. A.) 12 F.(2d) 49. Moreover, the facts in this case are not in controversy.

[6] 5. The Congress has plenary power to prescribe terms of admission into the United States for all aliens. In the exercise of such power, it has granted to the executive branch of the government authority to enforce the prescribed terms. The act of the Secretary of Labor in the instant case was in pursuance of law. The hearings granted were fairly and legally conducted and there was no abuse of discretion.

The action of the trial court in discharging the writ of habeas corpus should be affirmed. It is so ordered.