## UNITED STATES ex rel. IORIO v. DAY, Commissioner of Immigration.

Circuit Court of Appeals, Second Circuit. July 15, 1929.

No. 372.

Gaspare M. Cusumano, of New York City, for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ▮ The deportation being upon two findings, its propriety must depend upon these and these alone. Throumoulopolou v. U. S., 3 F.(2d) 803 (C. C. A. 1); Ex parte Turner (D. C.) 10 F.(2d) 816; Ex parte T. Nagata (D. C.) 11 F.(2d) 178. Strictly, the first ground of deportation as it reads is bad in law. The statute does not make it a ground for deportation that the alien has made a false oath upon his application for a visa or used it to get in. It is wrong to say in such a case that he came in without inspection, or in violation of law. It is true that the relator was bound to tell the truth on his application, but, if what he suppressed was irrelevant to his admission, the mere suppression would not debar him. Doubtless it might be made to do so, but we cannot find that it has been. So the first question comes down at most to whether the facts, had he disclosed them, would have been enough to justify the refusal of a visa or exclusion upon entry.

▮ We do not regard every violation of a prohibition law as a crime involving moral turpitude. No doubt it is the solemnly declared policy of this country that liquor shall not be made, sold, or possessed, but the standard set up in sections 3 and 19 of the act of 1917 (8 USCA §§ 136, 155) was purposely narrower than that. All crimes violate some law; all deliberate crimes involve the intent to do so. Congress could not have meant to make the willfulness of the act a test; it added as a condition that it must itself be shamefully immoral. There are probably many persons in the United States who would so regard either the possession or sale of liquor; but the question is whether it is so by common conscience, a nebulous matter at best. While we must not, indeed, substitute our personal notions as the standard, it is impossible to decide at all without some estimate, necessarily based on conjecture, as to what people generally feel. We cannot say that among the commonly accepted mores the sale or possession of liquor as yet occupies so grave a place; nor can we close our eyes to the fact that large numbers of persons, otherwise reputable, do not think it so, rightly or wrongly.

Congress may make it a ground of deportation, but while it leaves as the test accepted moral notions, we must be loyal to that, so far as we can ascertain it. In Coykendall v. Skrmetta, 23 F.(2d) 120 (C. C. A. 5), and in Bartos v. U. S. District Court, 19 F.(2d) 722 (C. C. A. 8), such crimes were held not to be morally shameful, although the Court of Appeals of the District of Columbia held the opposite by a divided vote in Rudolph v. U. S., 55 App. D. C. 362, 6 F.(2d) 487, 40 A. L. R. 1042. Rousseau v. Weedin, 284 F. 565 (C. C. A. 9), was clearly another case, for the crime consisted in maintaining a resort of ill repute. We conclude that the appellant did not suppress from the vice consul facts which would have justified him in refusing a visa, had he disclosed them, and that this ground for deportation was invalid.

The second ground was that the alien was at the time of entry likely to become a public charge. While it is true that he had already disclosed a disposition to violate local liquor ordinances, there is no evidence in the record that up to that time he had no other occupation. He did adopt that mode of life after his return, but he is not being deported for that. The most that can be said is that he had shown a propensity which made it not unlikely that he would in the end spend some time in jail at the public charge. His subsequent history is hardly evidence of a determination already formed; it did not justify the inference that he already meant to live by trading in liquor when he landed; as evidence it was neutral on that issue and his explanation, though the department was not indeed bound to accept it, was very plausible.

However, we pass that question because we think that if he was likely to end in jail, for all that he was not likely to become a public charge. Howe v. U. S. ex rel. Savitsky, 247 F. 292 (C. C. A. 2). At the time of that decision it is true that the clause was among the words "paupers," "professional beggars," and "vagrants" in section 2 of the law of 1907 (as amended March 26, 1910, 36 Stat. 263), and we relied upon this. Since then it has been moved to a distance in section 3 of the law of 1917 to meet the decision in Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114. Under the act of 1917, the Ninth Circuit followed our ruling in Ng Fung Ho v. White, 266 F. 765, 769, though the Sixth had taken the opposite view in the case of a professional gambler (Lam Fung Yen v. Frick, 233 F. 393), approving my ruling in U. S. ex rel. Freeman v. Williams (D. C.) 175 F. 274.

Since the transposition of the clause the point has not come up in this court, for U. S. ex rel. Mantler v. Commissioner, 3 F. (2d) 234, did not in fact involve it. However, the Fifth Circuit adopted the stricter construction in Coykendall v. Skrmetta, 22 F.(2d) 120, and the Ninth in Ng Fung Ho v. White, 266 F. 765, 769. The Eighth Circuit ruled otherwise in Medich v. Burmaster, 24 F.(2d) 57, though it was not necessary to the decision, and several District Courts have done the same. Guimond v. Howes, 9 F. (2d) 412; Ex parte Horn, 292 F. 455; Ex parte Tsunetaro Machida, 277 F. 239. Lisotta v. U. S., 3 F.(2d) 108 (C. C. A. 5), went off on the fact that the alien had been but once convicted.

The law is certainly in conflict and it is possible that the Supreme Court may take the broader view. It is true that the clause, however construed, overlaps other provisions; e. g., paupers, vagrants, and the like. It is certainly now intended to cover cases like Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114, where the occasion leads to the conclusion that the alien will become destitute, though generally capable of standing on his own feet. Moreover, there would still be some scope left for the clause making crimes a ground for exclusion, in cases where a single crime supported no just inference that it would be repeated.

Nevertheless, when Congress has specifically dealt with crime as a ground, and has defined what kinds are to be considered, it seems to us that we are not free to suppose that other crimes or the probability of other crimes is enough. Indeed, crimes committed after entry are specifically dealt with in section 19 (8 USCA § 155); two heinous crimes justify deportation at any time; one, within five years. The disposition so manifested would in many cases exist on entry; it seems improbable that having so provided for future crimes others were intended merely because they might be likely to occur. The language itself, "public charge," suggests rather dependency than imprisonment. As Judge Walker says, in Coykendall v. Skrmetta, it is repeated in section 3 as to children in a location that leaves no doubt of its limited meaning there. We are therefore not convinced that our holding in Savitsky's Case should be overruled, and it is unnecessary to say whether the evidence was enough to justify the conclusion that the appellant was likely to be imprisoned when he entered.

The record discloses a very lax regard for the fundamentals of a fair hearing. Much is tolerated in such proceedings, and that toleration has apparently borne its fruits. We will not say that we can put our finger on this or that to reverse, but the attitude of the examiner, the introduction of confused and voluminous evidence taken elsewhere, the strong indications that the appellant was vaguely regarded as undesirable, and that deportation was thought the easiest way to get rid of him and to avoid the normal processes of law—all these warn us of the dangers inherent in a system where prosecutor and judge are one and the ordinary rules which protect the accused are in abeyance. It is apparent how easy is the descent by short cuts to the disposition of cases without clear legal grounds or evidence which rationally proves them. These are the essence of any hearing in which the personal feelings of the tribunals are not to be substituted for prescribed standards. We reverse the order, however, not on this account, but because, on any theory, the evidence did not prove either of the findings on which the deportation rested. For that reason no remand is necessary.

Order reversed; relator discharged.