### UNITED STATES ex rel. LEHTOLA v. MAGIE, County Sheriff, et al.

District Court, D. Minnesota, Fifth Division. March 13, 1931.

John F. Maki, of Duluth, Minn., for petitioner.

George Heisey, Asst. U. S. Atty., of St. Paul, Minn., for the United States.

MOLYNEAUX, District Judge.

The petitioner is here upon a writ of habeas corpus issued out of this court. He is held upon a warrant issued by the Assistant Secretary of Labor for deportation upon the charge that he is an alien found in the United States in violation of the Immigration Act of February 5, 1917, to wit, that he was a person likely to become a public charge at the time of his entry.

Section 19, chapter 29, Immigration Act of February 5, 1917, § 155, title 8 of the USCA, provides as follows: "At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; * ~ ⁻ shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

Section 3, chapter 29, Immigration Act of February 5, 1917, section 136, title 8 USCA, provides as follows: "The following classes of aliens shall be excluded from admission into the United States ⁱ * ⁺ (i) Persons likely to become a public charge."

The facts as disclosed upon the hearing under the warrant of deportation before the Assistant Secretary of Labor show that the petitioner is a citizen of Finland who came to the United States in the year 1919 when he was 15 years old and that he is 26 years old at the present time. He came to this country to live with his father who then lived on a farm near Two Harbors, Minn.; for the first three years after coming to this country from Finland, the petitioner lived with his father and attended public school for three winters; he then obtained a job as a common laborer and worked for three months for the City of Two Harbors; from that time on to the present time he has worked pretty steadily, following the vocation of a sailor upon American boats plying the Great Lakes, during the boat season and working during the winters in the logging camps. When on the boats, he worked decking, coal passing, and portering, always on American boats. On the American Boat William H. Wolf in September, 1929, he made the port Midland, Ontario, and remained with the boat in that port three days. The boat was loading grain there at the time. He went ashore and remained in Canada a couple of hours, returning to the boat, and returned to Allouze, Superior, Wis., and re-entered the United States September 7, 1929.

It appears from the evidence that the petitioner was somewhat addicted to the use of intoxicating liquor and was arrested eight or nine times, each time on a liquor charge, in Duluth and West Superior, within the last five years. It appears, however, that he did earn his own living, working as before related. It appears from the evidence taken at the hearing that the petitioner was convicted in the municipal court of the city of Duluth as follows: April 12, 1925, for drunkenness, committed to St. Louis County Work Farm for twenty days; July 12, 1926, for drunkenness, committed to the St. Louis County Work Farm for twenty days; December 20, 1926, for drunkenness, suspended sentence; March 13, 1927, drunkenness, committed to St. Louis County Work Farm for twenty days; August 22, 1927, drunkenness, committed to St. Louis County Work Farm for twenty days; January 20, 1930, drunkenness, committed to St. Louis County Work Farm for twenty days.

He was also convicted in the United States District Court in and for the District of Minnesota, on February 11, 1930, for a liquor nuisance and was committed to the St. Louis County Work Farm for twelve months; also he was convicted on January 5, 1931, for drunkenness, in the municipal court of the city of Duluth, Minn., and sentenced to serve twenty days in the St. Louis County Work Farm.

The government depends upon the convictions and commitments of April 12, 1925, July 12, 1926, December 20, 1926, March 13, 1927, and August 22, 1927, to establish the charge that the petitioner was a person likely to become a public charge at the time of his re-entry into the United States, all of said convictions last above mentioned having taken place prior to his re-entry into the United States September 7, 1929. The subsequent convictions were admitted in evidence at the hearing, on the theory that they constituted corroborative evidence.

The position of the government is: (1) That the landing in Canada, as before related, and the return to the United States, constituted a re-entry into the United States; and (2) that the convictions aforesaid established the charge that the petitioner was a person likely to become a public charge at the time of his re-entry into the United States.

As to the first proposition, the Circuit Court of Appeals of this circuit in the case of U. S. ex rel. Medich v. Burmaster, 24 F.(2d) 57, supports the contention of the government.

In that case the alien entered the United States in 1913 and became engaged in a taxicab business. In June, 1924, while so engaged in the taxicab business, he transported a company of teachers to Canada and returned to the United States on the same day. It was held that such absence and re-entry made him subject to deportation under the Immigration Act of 1917, section 19, title 8, USCA § 155, within five years for a crime involving moral turpitude committed in Minnesota on April 24, 1924, and that the period in which an alien may be deported for commission of an offense involving moral turpi-

tude runs, not from the time when he first entered this country, but from his most recent entry, even though that entry be for a temporary and brief visit to a foreign country made with the intention to return here.

I think the law is settled as to this point by the decision of the Supreme Court in the case of United States ex rel. Claussen v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758. In that case, the alien having come to the United States shipped as a seaman for a round trip on board an American vessel to a South American port. He went with his ship to a South American port and returned to the United States. His absence and re-entry into the United States was held to constitute an entry into the United States within the meaning of section 19 of the Immigration Act of 1917.

As to the second proposition, it turns upon the meaning of the phrase contained in section 3, chapter 29, of the Immigration Act referred to, namely: "Persons likely to become a public charge."

■ The courts are in conflict on this question. The Second, Fifth, and Ninth Circuit Courts of Appeals hold one way and the Eighth circuit holds the opposite way. The view taken in the Second, Fifth, and Ninth is that the language of the statute referred to suggests dependency rather than imprisonment as the controlling element in the cause for deportation, and the reasoning of those cases is not only that the words naturally imply dependency rather than imprisonment, but also that, when Congress has specifically dealt with crime as a ground and has defined which kinds are to be considered as cause for deportation and which are not, the courts are not free to suppose that other crimes or the probability of other crimes is ground for deportation. The cases supporting the former view are U. S. ex rel. Iorio v. Day, 34 F.(2d) 920 (C C. A. 2d Cir.); Howe v. U. S., 247 F. 292 (C. C. A. 2d Cir.); Ng Fung Ho v. White, 266 F. 765, 769 (C. C. A. 9th Cir.); Coykendall v. Skrmetta (C. C. A.) 22 F.(2d) 120.

In United States ex rel. Medich v. Burmaster, 24 F.(2d) 57, 59, the Eighth Circuit Court of Appeals took a different view and held: "The fact that the appellant confessed to a crime punishable by imprisonment in the federal prison, and the very fact that he was actually incarcerated for a period of 18 months was sufficient to support the allegation in the warrant of deportation that he was likely 'to become a public charge' "—citing

Ex Parte Horn (D. C.) 292 F. 455; Ex parte Tsunetaro Machida (D. C.) 277 F. 239, loc. cit. 241; Ex parte Fragoso (D. C.) 11 F.(2d) 988; Ex parte Reeves (D. C.) 292 F. 766; Ex parte Britten (D. C.) 293 F. 61; U. S. v. Williams (D. C.) 175 F. 274.

United States ex rel. Medich v. Burmaster, supra, is cited by Judge Hand [U. S. v. Day (C. C. A.) 34 F.(2d) 920, 922], and I think correctly, as holding an opposite view to that proclaimed in the Second, Fifth, and Ninth circuits on this question.

In view of the holding of the Eighth Circuit, this court is relieved of much responsibility, and, whether that decision is sound or not, this court does not feel at liberty to do otherwise than follow it.

■ The present case presents even a stronger case on the theory of imprisonment being sufficient than the case of U. S. ex rel. Medich v. Burmaster, and in accordance with this view I hold that the evidence is sufficient to support the allegations in the warrant of deportation, and that the petitioner was at the time of his entering into the United States a person likely to become a public charge, and the writ of habeas corpus is discharged, and the petitioner is remanded to the custody of the sheriff of St. Louis county and the Assistant Secretary of Labor.