## UNITED STATES ex rel. VALENTI v. KARMUTH, Immigration Officer.

District Court, N. D. New York.

Sept. 1, 1932.

Morris I. Lipsitz, of Buffalo, N. Y., for relator.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y., for respondent.

COOPER, District Judge.

This is a habeas corpus proceeding on behalf of the relator, Paul Valenti, held under warrant of deportation.

The relator was born in Italy December 15, 1908, and came to this country with his parents October 28, 1914, and has ever since resided with them at Buffalo, attending school in that city, at least until June 16, 1924. It is asserted by the respondent that Valenti left the country on June 16, 1924, and returned the same day to this country, and this is claimed to constitute a re-entry. The facts relating thereto appear later herein.

On May 8, 1925, in the county court of Erie county, the relator pleaded guilty to the crime of assault, second degree, committed on March 29, 1925, and on May 15, 1925, was sentenced for an indeterminate term to Elmira Reformatory.

Deportation proceedings were initiated in August, 1925, and his deportation ordered on the ground that the aforesaid crime of assault, second degree, to which he pleaded guilty on May 15, 1925 was committed within five years after the alleged re-entry, that such crime involved moral turpitude, and that the sentence was for more than a year.

He was not, however, deported, and on December 30, 1927, he was convicted of the crime of grand larceny, second degree, and sentenced to Auburn State Prison for five years. The deportation proceeding was reopened on July 24, 1928, at Auburn Prison, and the additional charge laid against him that he had subsequent to February 1, 1917, been twice convicted of crimes involving moral turpitude and twice sentenced to imprisonment for more than one year.

On August 20, 1928, a warrant of deportation was issued based on the above two convictions.

Upon his release from Auburn Prison, relator was subjected to the aforesaid order of deportation and sued out this writ of habeas corpus.

The statute controlling the case is section 19, chapter 29, of the Act of February 5th, 1917 (8 USCA § 155), which, so far as applicable, reads as follows: "Except as hereinafter provided, any alien who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry * * * shall * * * be taken into custody and deported."

The crime of grand larceny, second degree, admittedly involves moral turpitude, and, if there was a new entry in 1924, the decision must go against the relator.

The relator, Valenti, denies that he left the country and returned on June 16, 1924, within the intent of the law, or at any other time, and also denies that he has committed two crimes involving moral turpitude.

This alleged new entry in 1924 arises out of the following facts:

A day or two prior to June 16, 1924, while the relator was a pupil in the public schools of Buffalo, the teacher announced that on June 16, 1924, the graduating class, of which relator was a member, would have a picnic at Crystal Beach, Ontario, on the northern shore of Lake Erie, across the lake from Buffalo.

The teacher asked the pupils to bring a certain small sum of money to defray expenses of transportation, etc., and on the appointed day, the class left the school and under the direction of the teacher went by boat from Buffalo to the beach. The teacher made all the arrangements for transportation and arranged for the sports played and food consumed. The class, including the relator, returned to Buffalo toward the close of the day still under the direction of the teacher. The facts of this picnic at the beach are given in the testimony of the relator and are not disputed. The relator testified that he knew the beach was in Canada.

It is this school picnic which the respondent asserts is a departure from and re-entry into this country within the meaning of the law.

The respondent, in support of this contention, cites the cases of U. S. ex rel. Kowalenski v. Flynn (D. C.) 17 F.(2d) 524; U. S. ex rel. Ueberall v. Williams (D. C.) 187 F. 470; and U. S. ex rel. Medich v. Burmaster (C. C. A.) 24 F.(2d) 57.

The facts in the Kowalenski Case have some similarity to the case at bar. The alien went from Buffalo to Fort Erie Beach by boat on a picnic for a day, and, on the question of whether his return that same day was a re-entry, the court said: "Many adjudications have held, and I must hold, that the duration of absence in a foreign country, even though divided only by a span across Niagara river, has nothing to do with the case."

Further, he also states: "Hence it is immaterial whether an alien's departure from the United States was only temporary, for recreation, visiting, or business. Nor does it make any difference, as the decisions point out, that he had no intention to remain away, and came back on the same day by the same boat."

The court held that the alien should be remanded to the custody of the immigration authorities for deportation.

In the Ueberall Case, the headnote in this case states very well the text in the opinion: "Relator, an alien of the excluded classes, having been in the United States more than three years, shortly before his arrest as an alien not entitled to enter, while in Niagara Falls, passed from the American to the Canadian side to view the falls, and, after staying there an hour or more, came back to New York, and shortly thereafter was arrested. Held, that his return to the United States after going into Canada constituted a re-entry, after which he was subject to deportation."

In the Medich Case, supra, the alien, a taxicab driver, transported teachers to Canada and returned the same day. Such return was held to be a re-entry.

In the decisions on the subject of the departure and re-entry of an alien, there is a necessary implication that the acts of the alien were at all times voluntary and free from restraint of any kind, and that there was entire liberty on his part to leave or not to leave, to re-enter or not re-enter, as he pleased.

The relator here, at the time of his going to Canada on the picnic during his sixteenth year, was a pupil in the public schools of the state of New York. It is the law of the state that a pupil in public school must at-

tend school every school day, except during illness or other circumstances warranting temporary absence. He must report at his school at the appointed time, do certain things at stated times or at the request of his instructor, and is generally under the direction and control of the teacher until the end of the school day.

A schoolboy of 16, in an American public school, told with the others of his class that the class would go across Lake Erie to a Canadian beach for a day's picnic, and who goes with the teacher and class and returns with them, is not possessed of freedom of action to decide whether or not he will go. He is not a free agent acting entirely of his own volition. He is under compulsion as if he were in the school room, and is not voluntarily departing from and re-entering the country within the meaning of the statute under the foregoing or any other authorities known to this court. On the contrary, he was under compulsion both when he left for and when he returned from such picnic.

This compulsion under which the relator may be presumed to have acted serves to distinguish his case from the cases of Kowalenski, Ueberall, and Medich supra, and like cases where the departure was purely voluntary. And this is so, although none of these cases expressly holds that the going to a foreign country must be of one's own volition. But such freedom of action is necessarily implied. Any other view would be unreasonable and untenable.

It would hardly be contended that, if one were kidnapped, or abducted and taken by force to a foreign country, and then allowed to return to the country, or if one were kidnapped, taken to a foreign country, escaped and returned to the United States, such return would be a new entry within the meaning of the law.

In connection with the views here expressed, see Ex parte T. Nagata (D. C.) 11 F.(2d) 178.

It is held, therefore, that there was no entry or re-entry on June 16, 1924, and that the date of the relator's entrance into this country was the time of his original entry on October 24, 1914.

It follows that the conviction of grand larceny is not sufficient to warrant deportation.

The writ must be sustained, therefore, unless the crime of assault in the second degree also involves moral turpitude.

It is strenuously contended on the part of the relator that the crime of assault, second degree, does not involve moral turpitude as a matter of law.

The relator supports his contention with the following cases: Ciambelli ex rel. Maranci v. Johnson (D. C.) 12 F.(2d) 465; U. S. ex rel. Griffo v. McCandless (D. C.) 28 F.(2d) 287.

The indictment outstanding against the relator here at the time of the plea of guilty of assault in the second degree was an indictment, not for assault, but for robbery in the first degree.

The indictment is as follows:

"Supreme Court, Erie County.

"The People of the State of New York vs. Santi Costa, Paul Valenti, Dominic Tresco.

"The grand jury of the county of Erie by this indictment accuse Santi Costa, Paul Valenti and Dominic Tresco and each of them of the crime of robbery in the first degree, committed as follows, to wit:

"That the said Santi Costa, Paul Valenti and Dominic Tresco, and each of them, each being then and there aided by the other actually present on the 29th day of March in the year of our Lord One Thousand, Nine Hundred and Twenty-Five, at the City of Buffalo, in the County of Erie aforesaid, with force and arms upon one Irwin Woods, in the Peace of the People then and there being, feloniously and by means of force and violence, did make an assault and the said Santi Costa, Paul Valenti, and Dominic Tresco, and each of them being then and there aided by the other actually present, violently and by means of force and violence and fear of injury to the person of the said Irwin Woods, against the will and in the presence and from the person and possession of the said Irwin Woods, did seize, take and carry away, in the presence and from the possession of the said Irwin Woods, $1.50 in money of a kind, number and denomination to the Grand Jury aforesaid unknown, a more particular description whereof cannot, therefore, now be given, of the value of $1.50, one gold ring of the value of $2.50; of the goods, chattels and personal property of the said Irwin Woods, then and there being found, contrary to the form of the Statute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

This indictment was found at the April term of the Supreme Court in Erie county. On April 17, 1925, the three defendants were arraigned in that court, pleaded not guilty, and were released in bail of $5,000 each, and the case transferred to the county court. On the 5th of May, 1925, the defendant Tresco pleaded guilty in county court to assault in the second degree, and on May 22d his sentence was suspended during good behavior.

On May 8th, the defendants Costa and Valenti, the present relator, pleaded guilty in the county court to assault in the second degree, and on the 15th of May each of them was sentenced to the Elmira Reformatory, and the sentence was by force of law an indeterminate sentence.

The crime of robbery is defined in section 2120 of the Penal Law of the state (Consol. Laws, c. 40) as follows:

"§ 2120. *Robbery Defined.* Robbery is the unlawful taking of personal property, from the person or in the presence of another, against his will, by means of force, or violence, or fear of injury, immediate or future, to his person or property, or the person or property of a relative or member of his family, or of any one in his company at the time of the robbery."

Section 2121 provides that the force or fear must be employed to obtain or retain possession of the property or to prevent or overcome resistance to its taking and not as a means of escape.

Section 2122 provides that the degree of force employed is immaterial.

Section 2124 defines robbery in the first degree as robbery committed by a person: (1) Being armed with a dangerous weapon; (2) being aided by an accomplice actually present; (3) by the infliction of grievous bodily harm, etc.

This indictment brings the charge under subdivision 2, for there is no allegation of the presence or use of a dangerous weapon or the infliction of any bodily harm.

There was no plea of guilty of robbery in the first degree as charged, nor to a lesser degree of robbery as permitted by sections 30 and 610 of the Penal Law. The plea of guilty to assault in the second degree can only be justified under section 445 of the Code of Criminal Procedure.

"§ 445. *In Other Cases, Jury may Convict of Any Offense Necessarily Included in that Charge.* In all other cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment."

Was the crime of assault in the second degree necessarily included in the crime of robbery, first degree, as alleged in the indictment?

The statutory crime of assault, second degree, is defined in section 242 of the Penal Law of the state of New York as follows (39 McKinney's Consolidated Laws of New York, page 78 [Consol. Laws, c. 40]):

"§ 242. *Assault in Second Degree.* A person who, under circumstances not amounting to the crime specified in section two hundred and forty,

"1. With intent to injure, unlawfully administers to, or causes to be administered to, or taken by another, poison, or any other destructive or noxious thing, or any drug or medicine the use of which is dangerous to life or health; or,

"2. With intent thereby to enable or assist himself or any other person to commit any crime, administers to or causes to be administered to, or taken by another, chloroform, ether, laudanum, or any other intoxicating narcotic or anæsthetic agent; or,

"3. Wilfully and wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon; or,

"4. Wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm; or,

"5. Assaults another with intent to commit a felony, or to prevent or resist the execution of any lawful process or mandate of any court or officer, or the lawful apprehension or detention of himself, or of any other person,

"Is guilty of assault in the second degree."

It will clearly be seen that the defendants could not be brought under subdivisions 1 and 2 of the section because there is no allegation of the use of drugs. Nor were they under subdivisions 3 or 4 of the section, because there is no allegation that they inflicted grievous bodily harm, nor that there was use of any instrument or other thing likely to produce grievous bodily harm. That leaves subdivision 5 of the section. There is no allegation that the complainant was an officer nor that the defendants assaulted him to prevent the execution of any court mandate or to prevent the arrest of any person. The defendants therefore would come under

this paragraph only if the indictment alleged that they assaulted another with intent to commit a felony.

But there is no such allegation. True, there is an allegation that the defendants committed a felony, viz. the crime of robbery, first degree, in that by the use of force, violence, and fear of injury, and in the presence of an accomplice, they took from his person property of value. This is a much more serious crime than assault, second degree, for the punishment may be as much as twenty years in state's prison, with no alternative of fine, while the crime of assault, second degree, is punishable with imprisonment in a penitentiary or state prison not exceeding five years or by a fine not exceeding $1,000 or both.

■ But there was no plea of guilty to the crime of robbery as charged or to any lesser degree of robbery. Conviction of a lower offense is acquittal of the higher offense. People v. Wein, 196 App. Div. 368, 370, 187 N. Y. S. 753; Wharton, Criminal Law, § 33.

■ The allegations relating only to robbery, first degree, must therefore be eliminated from the indictment. Unless the allegations relating to the higher crime but not to the lower can be stricken from the indictment, and leave allegations relating to the lower crime sufficient to constitute the crime to which plea of guilty was made, the lesser crime is not necessarily included in the greater, and there can be no conviction or plea of such other and lower crime under section 445 of the Code of Criminal Procedure. People v. Miller, 143 App. Div. 251, 256, 128 N. Y. S. 549, affirmed 202 N. Y. 618, 96 N. E. 1125; People v. Nichols, 230 N. Y. 221, 225, 228, 129 N. E. 883.

In the Miller Case the court held that conviction was valid because all the allegations were present in the indictment necessary to constitute the lesser crime after striking out those relating only to the higher crime.

The converse must be true that, unless such allegations do appear, there can be no conviction of any crime other than the one alleged, except that there may be conviction of a lesser degree of the same crime or of an attempt to commit the same crime under sections 30 and 610 of the Penal Law of New York.

The allegations of taking by force, etc., of personal property from the person of the complainant in the presence of an accomplice are pertinent only to the charge of robbery, first degree.

There remains in the indictment pertinent to the crime of assault in any degree only these allegations, viz. that the defendant "with force and arms upon one Irwin Woods feloniously and by means of force and violence did make an assault * * * violently and by means of force and violence and fear of injury."

The use of the word "feloniously" adds nothing and does not serve to convert a misdemeanor into a felony. Indeed, the word "feloniously" should be stricken out as relating to robbery only.

These allegations so remaining are sufficient to charge assault in the third degree, but not in the second degree. Assault in the third degree is a misdemeanor, and does not involve moral turpitude.

■ If it be contended that the acceptance of the plea of guilty of assault in the second degree under the indictment was within the exclusive jurisdiction of the state court, and that it must be taken as res adjudicata in this court that the relator pleaded guilty to assault in the second degree and not in the third degree, the answer is that undoubtedly that is so. But the mere fact that the relator pleaded guilty to a named crime does not necessarily determine the question of moral turpitude. The trial court was not concerned with the question of whether or not moral turpitude was involved, but with appropriate disposition of the indictment.

When confronted with the necessity of deciding whether the named crime to which the relator pleaded guilty involves moral turpitude, this court may, in reaching a decision, when the question is doubtful, look behind the plea to the charge or indictment upon which the plea was made for the purpose of determining the question.

In so doing, and particularly where the plea was to a crime not charged in the indictment and which must have been necessarily included therein, this court may, and should, determine for itself, not whether the relator should have pleaded as he did, nor whether the judgment of conviction of assault, second degree, is res adjudicata in this court, but whether the allegations of the indictment pertinent to the crime to which plea of guilty was entered state a crime involving moral turpitude. As to many of the lesser crimes, the question of moral turpitude is not determined by the name of the crime,

but by the nature of the crime' as defined in the statute and alleged in the indictment.

Further, it may well be doubted whether assault in the second degree necessarily and at all times involves moral turpitude. The range of punishment is from $1 fine to five years in state's prison or penitentiary.

That a person may lawfully use sufficient force to protect himself, his family or his property, without committing a crime, has always been the law, and is in part embodied in section 246 of the Penal Law of the state. If a person thus protecting himself and his property, through fear or error of judgment, uses more force than necessary in protecting himself, and thereby inflicts grievous bodily harm on his assailant, and by reason of the use of such excessive force is convicted of assault, second degree, it would be rather a strained and technical construction to hold that he was guilty of a crime involving moral turpitude.

Also one may resist an officer in making an arrest through ignorance of the law or for some other ignorance, thereby making himself liable to conviction of assault, second degree, and yet not be guilty of moral turpitude.

Surely the Legislature recognized that a crime, the punishment of which may be $1 fine, is not always a serious one, else the possibility of such light sentence would not have been given place in the statute. It is reasonably clear that in the offense of assault in the second degree there may or may not be moral turpitude, depending upon the nature of the crime as charged in the indictment upon which conviction was had. In this connection see the case of U. S. ex rel. Mylius v. Uhl (C. C. A.) 210 F. 860.

The previously mentioned cases cited by the relator to support his contention that assault, second degree, to which relator pleaded guilty, does not necessarily involve moral turpitude, have close analogy to the case at bar, though the assault is not described by degree but by name, indicating similar gravity of offense. But, in view of the conclusion here reached, it is not necessary to discuss those cases.

The allegations of the indictment here relating only to the charge of assault, whatever be the degree, charge no crime involving moral turpitude.

The government has failed to meet the burden of showing the relator convicted of two crimes involving moral turpitude, and the writ must be sustained and the relator discharged. An order may be entered to such effect.