UNITED STATES ex rel. BERLANDI v. REIMER, Commissioner of Immigration.

No. 319.

Circuit Court of Appeals, Second Circuit.

July 10, 1940.

L. HAND, Circuit Judge, dissenting.

Jacob W. Rozinsky, of New York City, for relator-appellant.

John T. Cahill, U. S. Atty., of New York City (K. Bertram Friedman, Asst. U. S. Atty., of New York City, of counsel), for respondent-appellee Commissioner of Immigration.

Before L. HAND, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On February 14th, 1938, the relator Berlandi, an alien and citizen of Italy, was convicted in the District Court for

the Western District of Pennsylvania, on a plea of guilty of violating Title 26, U.S.C.A.Int.Rev. Code, Section 3321, in that he did deposit and conceal distilled spirits, to wit: twenty-five gallons of whisky subject to tax with intent to defraud the United States. On May 26th, 1938, he was convicted in the same court under Title 18, Section 88 of the United States Code, 18 U.S.C.A. § 88, on a plea of guilty for conspiring with others to violate the internal revenue laws, namely, to deposit and conceal distilled spirits with intent to defraud the United States of the taxes imposed thereon. He was sentenced to imprisonment for a year and one day upon each conviction. In addition to the foregoing sentences this alien was sentenced to serve forty days in the County Jail at Greensburg, Pennsylvania, in 1927, six months at the Alleghany Workhouse in 1931, and six months at Greensburg in 1933 or 1934, all on liquor charges.

The alien last entered the United States on September 6, 1912, was thereafter married in Pennsylvania to a nativeborn citizen of the United States and has no children. His parents, brothers and sisters live in Italy, and his wife contemplates a divorce.

The relator was ordered deported pursuant to the Immigration Act of 1917, in that he had been sentenced subsequent to May 1, 1917, to imprisonment more than once for a term of one year or more because of the commission subsequent to entry of a crime "involving moral turpitude". Section 19, 8 U.S.C.A. § 155. He applied for a writ of habeas corpus and from an order dismissing the writ has appealed to this court.

Appellant's counsel does not question that the conviction for conspiring to defraud the revenue was for a crime involving moral turpitude but argues that the conviction under Section 1441 of Title 26 (which since the amendment of 1936 has become Section 3321) was not for a crime involving moral turpitude and that, therefore, two convictions such as the statute requires for deportation were lacking.

In Guarneri v. Kessler, 98 F.2d 580, the Circuit Court of Appeals for the Fifth Circuit held that conspiring to smuggle and conceal imported alcohol with intent to defraud the revenue was a crime involving moral turpitude because of the intention to defraud. In Coykendall v. Skrmetta, 22 F.2d 120, 121, the same court held that an alien, convicted of violating the National Prohibition Act, 27 U.S.C.A. § 1 et seq., by manufacturing from grapes, and having in his possession for his own use, 150 gallons of wine, had not been convicted of a crime involving moral turpitude because "the making or possession of wine for the use of the maker as a beverage was not generally regarded as morally wrong". The distinction between the above decisions is that the first involved a business enterprise conducted with the intention of defrauding the revenue and the second only a home manufacture for personal use doubtless without any thought of defrauding. The distinction between the manufacture of beverages for personal, family or social use and a manufacture for profit was likewise made by the Circuit Court of Appeals for the Eighth Circuit in Bartos v. United States District Court, 19 F.2d 722. In United States ex rel. Iorio v. Day, 2 Cir., 34 F.2d 920, we went so far as to hold even selling whisky in violation of the Volstead Act was not a crime involving "moral turpitude" as those words are used in the Immigration Act.

It may be that, before the repeal of the 18th Amendment when prosecutions under internal revenue statutes were but alternatives for prosecutions under the Volstead Act, convictions under these various statutes would have been treated alike so far as any question of moral turpitude was concerned. This might seem natural because, except under rare circumstances, the manufacture or sale of liquor was unlawful and the manufacturer or seller could acquire no right to do a lawful business by merely complying with internal revenue statutes and paying taxes. Hence there would in no case be any specific intent to defraud the government but only a general purpose to disregard the prohibition laws. Since the repeal, however, the situation would seem to be different for the business can now be lawfully conducted by the payment of internal revenue taxes and the specific intent becomes one of enhancing profits by evading taxes, rather than of satisfying the demand for liquor which the Prohibition Act refused to sanction.

We think it cannot be said that one who conducts a business with intent to defraud the government of taxes and who probably could not conduct it at a profit

if he paid the taxes stands in a different position from that of a person who defrauds a private citizen of property. An intent to steal or defraud in the latter case has repeatedly been held to render an offense one which involves moral turpitude and for which an alien may be deported or excluded under the Immigration Laws. United States ex rel. Robinson v. Day, 2 Cir., 51 F.2d 1022; United States v. Kellogg, 58 App.D.C. 360, 30 F.2d 984, 71 A.L.R. 1210; Tillinghast v. Edmead, 1 Cir., 31 F.2d 81; United States v. Burmaster, 8 Cir., 24 F.2d 57. And we said in United States v. Day, 2 Cir., 51 F.2d 1022, when dealing with a case of third degree forgery under the New York statutes as a ground for deportation: "Forgery in all its degrees, as defined by the Penal Code of New York * * * involves an intent to defraud, and is thus a crime of moral turpitude".

It has been held that a false statement under oath made by an alien on entry as to the relatives he then had in this country involved moral turpitude for which he might properly be excluded. Kaneda v. United States, 9 Cir., 278 F. 694. In United States v. Reimer, 2 Cir., 79 F.2d 513, we held that aiding an alien to make false statements regarding his name and entry into the United States, thus depriving the government of means of identifying the immigrant, was a crime involving moral turpitude for which he was deportable.

The strongest argument for the alien is perhaps his own that he was only a "moonshiner", but this to us is not persuasive. Fraud has ordinarily been the test whether crimes not of the gravest character involved moral turpitude in the sense of the statute. Here fraud was established by the judgment of conviction. The man was a persistent violator of the revenue laws, with the evident intention of plying a trade that would enable him to make money by defrauding the government of taxes. We cannot say that such a business was not disreputable and did not involve moral turpitude in a sense generally accepted, however lightly "moonshining" is sometimes regarded.

Order affirmed.

L. HAND, Circuit Judge (dissenting).

I could wish that it was commonly thought more morally shameful than it is to evade taxes; but it is certainly true that people who in private affairs are altogether right-minded, see nothing more than a venial peccadillo in smuggling, or in escaping excises on liquor. Indeed, in some parts of the country "moonshining" has for a century and more been a patriarchal right; and surely it is quite beyond measure to compare its disrepute with defrauding an individual. There is always the danger in construing this statute that we shall substitute logic for fact and deport a man for what people ought consistently to think of him, rather than for what they do; moreover, it is always embarrassing to appear to condone any deliberate violation of law. But, as we said in United States ex rel. Iorio v. Day, 2 Cir., 34 F.2d 920, we must try to appraise the moral repugnance of the ordinary man towards the conduct in question; not what an ideal citizen would feel. That decision, in my opinion, rules this situation and the order should be reversed.