Ross<br>*vs*<br>COMMONWEALTH

## Ross *vs* Commonwealth.

APPEAL FROM THE CITY COURT OF LOUISVILLE.

*Indictment. Nuisance. Particeps criminis.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

INDICTMENT.<br><br>*Case* 133.<br><br>*May* 31.

THIS writ of error brings up for revision the question whether the owner of a house (in a city) kept by his tenant, with his knowledge and presumed consent, as a bawdry, and rented by him "to be kept as such," and with a knowledge that it would be so prostituted, is guilty of aiding in a public nuisance, and is, therefore, punishable by indictment for a misdemeanor.

Questions presented by the record.

As the keeping of a bawdy house is a public offence, every person who voluntarily aids in establishing such a pestilent nuisance, should be deemed guilty of a misdemeanor. Although an unlawful intention or motive, without any corresponding or consequential act, is not cognizable by our criminal code, yet an act done by one person for the purpose of exciting or facilitating a crime by another, may, according to the common law, be an indictable offence. And it has been adjudged in many cases, that an attempt to incite a crime may be a misdemeanor, even though the contemplated crime itself may never be perpetrated. In *The King* vs *Higgins*, (2 *East,* 5;) it was adjudged that *Higgins* was punishable by the common law for soliciting a servant to rob his master, although the robbery was never committed. And in the *King* vs *Philips*, (7 *Ib.* 464,) an indictment for a misdemeanor was sustained for endeavoring to incite a challenge to fight.

Every person who voluntarily aids in establishing a bawdy house is guilty of a misdemeanor.

Vol. II.                              53

Ross
*vs*
COMMONWEALTH

The mere renting to another a house to be kept as a bawdy house, is no offence unless it be so kept, nor is the act of selling a house to a known bawd an indictable offence.

The owner of a house may be legally as well as morally responsible for a criminal use made of his house with his knowledge and consent, and especially to his profit.

The principle of these cases would not, however, apply to the renting of a house to be kept as a bawdy house, unless it shall have been accordingly so prostituted; for the house not being converted into a nuisance, the mere act of renting it should not, in our opinion, be deemed an unlawful incitement to a nuisance, when the lessee had a predisposition, to establish one somewhere, and would have been as apt to be guilty of doing so without renting that particular tenement.

Nor, for the like reason, would the mere act of selling a house to or building one for a woman known to be a bawd, be an indictable offence, whatever use she might afterwards make of it as her own property, over which no other person would have any dominion, and for the nuisance of which, therefore, by herself, she alone should be responsible. Her chief motive for buying that particular tenement, and the only purpose of the vendor or undertaker for selling or building it, may be presumed to have been its desirableness to her as property, and the value of the price to him. And her subsequent prostitution of it could not be considered as instigated by, or as resulting from the vendor's act of selling or the mechanic's act of building that particular house, to be used by her as her own absolute estate.

But the owner of a house might be legally as well as morally responsible for a criminal use made of *his* house, with his knowledge and consent, and especially to his profit, when the vendor would be clearly irresponsible, both in law and ethics, for a similar use of her own house by his vendee.

If lessee convert the tenement into a moral nuisance, and the owner leased it for that purpose, or knowing that it would be so prostituted, derived any profit from its being used for such purpose, to such tenant, which he would not otherwise have enjoy-

If a lessee convert the demised tenement into a moral nuisance, and the owner leased it *for that purpose,* or, knowing that it would be so prostituted, derived any profit or advantage from renting it for such use and to such a tenant, which he would not otherwise have enjoyed as certainly and beneficially, he might be deemed a *particeps criminis,* and punishable for a misdemeanor. Such illegal use of *his* house by his bailee, with his purchased consent and virtual co-operation, would, in judgment of law, be his act, *quantum en illo,* as far as in him lay.

Whether such was the purpose or such the knowledge and profit or advantage of the lessor of a house to a notorious bawd, would be a question of fact to be decided by a jury, upon a consideration of all the circumstances. And although the mere act of renting a house to a woman known by the lessor at the time, to be a bawd, might not be, *per se,* a misdemeanor, nor necessarily imply a criminal purpose or co-operation on the part of the lessor, yet we cannot say that such a fact would, in no case, authorize a jury to infer such purpose or co-operation. The propriety of such a deduction, from such a fact, would depend, in every case, on the complexion of the case as seen by a jury of practical men, through the medium of personal knowledge and peculiar circumstances, often minute, indefinable, and separately impalpable to a revising tribunal.

The lessor's intention, motive, or purpose, upon which alone his legal guilt or innocence must depend, is a fact which a jury is most competent to determine correctly, and have, therefore, the exclusive right to consider and decide, unless there should be a palpable destitution of any evidence tending to prove a criminal intent.

In this case the indictment, charging a renting of a house to a notorious bawd, *to be kept* as a bawdy house, and such keeping of it by her accordingly, imports that, in making the lease, the lessor was influenced by the unlawful purpose of encouraging a nuisance, and was, therefore, guilty of wantonly aiding the criminal prostitution of his own house, and therefore, the indictment is good.

And we are also of the opinion that the Circuit Judge did not err in leaving the facts to the jury, nor in overruling a motion for a new trial. As already intimated, we cannot judicially determine that the fact, as indisputably proved, that the lessor knew that the lessee was a bawd, and the fact, as certainly proved, that she did use his house, with his knowledge and apparent concurrence, as a public house of prostitution, and the fact, also proved, that he derived ample profit from her occupancy, and not improbably some advantage from such illegal use of it, did not authorize the jury, presumed to be well ac-

Ross
*vs*
COMMONWEALTH

ed, as certainly and as beneficially, he might be punished as *particeps criminis.*

An indictment charging · the renting of a house to a notorious bawd *to be kept* as a bawdy house, and such keeping of it by her accordingly, imports that, in making the lease the lessor was influenced by the unlawful purpose of encouraging a nuisance.

The facts, that a lessor knew that the lessee was a bawd, that she did use his house, with his knowledge and apparent concurrence, as a public house of prostitution, and that he derived ample profit for its occupancy, may authorize a jury

quainted with the parties, to infer through the peculiar atmosphere as seen by them around the case, that it was his purpose, when he leased the house, that it should be so prostituted, and that he was a voluntary and mercenary co-operator in the illegal use accordingly made of it by his tenant. And such an indictment as this, and on such facts as those proved in this case, the Supreme Court of *Massachusetts* affirmed, on common law principles, a judgment of conviction in the case of the *Commonwealth* vs *Harrington*, (3 *Pickering's Rep.* 26.) And although that Court and this may not have reached the same conclusion by precisely the same process, still their decision in that case corroborates ours in this.

It is, therefore, considered that the judgment for the assessed fine of $21 be affirmed.

*Wilson and Ballard* for appellant; *Cates, Atto. Gen.* for the Commonwealth.