## Blocker v. Commonwealth.

(Decided April 22, 1913.)

### Appeal from Daviess Circuit Court.

Disorderly House—Liability of Lessor of Premises.—The lessor cannot be held criminally liable because his lessee conducts a bawdy house or a disorderly house in the rented premises (although he may have information of the unlawful use to which the tenant is putting the rented property), unless it be further shown that he leased the premises knowing that the lessee would or intended to use them for the purpose of conducting such a house. or before, or at the time of the lease, was in possession of such information as would put a reasonably prudent man upon notice of the purpose for which the premises were being leased. or consented or acquiesced in the premises being used for such unlawful purpose, or derived some profit or gain from such unlawful use.

SWEENEY, ELLIS & SWEENEY and F. J. LASWELL for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, CLARENCE M. FINN and BEN D. RINGO for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The grand jury of Daviess County, in November, 1911, returned against the appellant, Blocker, an indictment charging that he,

"In the county aforesaid, and within twelve months next before the finding of this indictment, and from that time up to and including the day of the finding of the indictment, did unlawfully suffer and permit Mattie Boswell, a common prostitute, to occupy a house owned or controlled by defendant, and being in the city of Owensboro, and on West Second Street, the exact location of which is to the grand jury unknown, and this defendant did, well knowing that the said Mattie Boswell would and

was using said house as a house of evil repute, and would and was suffering and permitting divers persons to habitually assemble in said house in the county aforesaid for the purpose of having sexual intercourse one with another, said persons not then being married one to the other, and said persons being lewd characters, and this defendant did with knowledge and notice of the fact that said house was then and there being conducted by said Mattie Boswell as a bawdy house as aforesaid; to the common nuisance of all the good citizens of the Commonwealth of Kentucky then and there in the neighborhood passing and repassing, residing and being, and having the right then and there to pass, repass, reside and be, and against the peace and dignity of the Commonwealth of Kentucky.''

Under this indictment he was convicted and a fine of $250, assessed against him. We are asked to reverse the judgment: (1) for error of the court in overruling a demurrer to the indictment; (2) for error committed in admitting and rejecting evidence; (3) for error in giving and refusing instructions.

It appears without contradiction that in November, 1910, Blocker rented a two-story frame building in the city of Owensboro which had been used for hotel purposes to Mattie C. Boswell for a period of one year at a monthly rental of $35. The contract stated ''That the said house is rented to the party of the second part for the purpose of conducting a hotel and boarding house in it, and the party of the second part agrees to take as good care of said house as the said house will admit of. * * * And it is further understood and agreed at the end of the term as above written, one year, if everything is satisfactory, it is agreed that this contract shall be in force for one more year and under the same conditions for another year, making three years in all at the same rental terms and conditions.''

The evidence for the Commonwealth showed that Mattie Boswell was a woman of bad character and a prostitute both before and during the year she occupied the rented house, and that she conducted therein in connection with a boarding house a house of prostitution frequented by bad characters, to the great annoyance and offense of the neighbors who lived adjacent and near to the Blocker property, which was located in a populous part of the city.

It was also shown that in the early part of 1911 Blocker was told of the character of house she kept and what a great annoyance and offense it was to people living in the neighborhood, and that he promised to look into the matter, and afterwards consulted with the chief of police, who advised him that the house was not a disorderly place.

Without relating further the evidence in behalf of the Commonwealth, it is sufficient to say that it established the disorderly character of the house kept by the Boswell woman, and if the prosecution had been instituted against her, the evidence would have sustained a judgment of conviction and the indictment would have been sufficient.

But there was no evidence on the part of the Commonwealth that Blocker knew or had any information of the character of the Boswell woman before he rented the house to her, or that he knew or had any information before or at the time the rental contract was entered into that she intended to keep a disorderly house or use the rented premises for immoral purposes, or in any other way than as a hotel or boarding house, for which purpose the building was well adapted and had been previously used, or that he consented to or acquiesced in the use to which the house was being put, or participated in any manner in receipts or profits derived from such use.

At the conclusion of the evidence the court instructed the jury as follows:

"1. If the jury believe from the evidence they have heard in this case to the exclusion of a reasonable doubt that in Daviess County and within twelve months next before the 17th day of November, 1911, the defendant was in control or the owner of a house on West Second Street in Owensboro, Kentucky, and it was being occupied by Mattie Boswell as his tenant, and the said Mattie Boswell suffered and permitted persons to habitually assemble in said house for the purpose of having sexual intercourse one with another, said persons not being married to each other, and being of lewd character, and the defendant knew or had notice of the purpose and the use to which said house was being used by Mattie Boswell, and it was to the common nuisance of the good citizens residing in said community passing and repassing said house, then you should find the defendant guilty as charged in the indictment and fix his punishment at a fine in any sum in your discretion, or confinement in the county jail for any

length of time in your discretion, or you may both fine him and send him to the county jail in your discretion.

"2. If from all the evidence you have heard in the case you entertain a reasonable doubt as to whether or not he is proven to be guilty, you should find him not guilty."

The case for the Commonwealth as presented in the indictment, the evidence and the instructions proceeded upon the erroneous theory that if Blocker owned the property, and his tenant, the Boswell woman, conducted and maintained therein a house of ill-fame and a disorderly house, and Blocker had notice during the tenancy of the character of the house so conducted by his tenant, he was guilty of the offense of maintaining a disorderly house. We have no statute in this State describing or punishing the offense of keeping a disorderly house, but there is abundant authority holding that it is an indictable misdemeanor at common law to keep a disorderly house or to let a house to be so kept. Russell on Crimes, vol. 1, page 322. Bishop's New Criminal Law, vol. 1, sec. 1083.

We also think it well settled by the authorities that a lessor is not criminally liable because his lessee conducts a bawdy house or a disorderly house in the leased premises, although he may have information subsequent to the letting of the premises of the unlawful use to which the tenant is putting the rented property, unless it be further shown that he leased the premises knowing that the lessee would or intended to use them for the purpose of conducting such a house, or before or at the time the lease was entered into was in possession of such information as would put a reasonably prudent person upon notice of the purpose for which the premises were being leased, or consented to the premises being used for such unlawful purpose, or derived some profit or gain from such unlawful use. Bishop's New Criminal Law, vol. 1, sec. 1090. Wharton's Criminal Law, vol. 2, sec. 1459. Russell on Crimes, vol. 1, page 322.

So that unless it can be shown in one of these ways by direct or circumstantial evidence sufficient to warrant a conviction that the lessor aided or abetted in keeping the disorderly house, he should not be held responsible for the unlawful acts or conduct of his tenant. We have no statute defining the liability of a landlord whose tenant conducts a disorderly place, or authorizing a landlord to eject a tenant who converts the rented premises into a

disorderly place, and in the absence of statutory direc-
tion on the subject we are not willing to lay down the rule
that a landlord, who, in good faith, rents his property for
legitimate purposes, should be treated as an aider or
abettor or partner in the crime of a tenant, who, without
the consent of the landlord, devotes the rented property
to improper uses. No person should be held answerable
for the misconduct of a party over whom he has no con-
trol and who independently and of his own volition vio-
lates the law. Nor does the mere fact that the landlord
owns the premises in which the unlawful acts take place,
or the fact that, after the lease has been entered into, he
has brought to his notice the unlawful conduct of his
tenant, make him a participant in the offense of the ten-
ant, unless he voluntarily chooses to become a participant
in the wrong-doing in some one of the ways we have
mentioned.

If, however, the landlord aids or assists his tenant
in keeping a disorderly place, or lets the premises for this
purpose, or lets them to persons of known bad character
without taking any pains to inform himself of the use to
which they will put the property, or when he derives di-
rectly or indirectly gain or profit from the unlawful busi-
ness or consents that it may be carried on there is no rea-
son why he should not be dealt with as a principal of-
fender.

These general observations seem to us reasonable and
sound, both as applied to the landlord and the public, and
are in accord with the decisions of this court. Thus in
Ross v. Commonwealth, 2 B. Mon., 417, the court, in con-
sidering the liability of the landlord to indictment and
punishment for the act of his lessee in keeping a disorder-
ly house, said:

"If a lessee convert the demised tenement into a moral
nuisance, and the owner leased it for that purpose, or,
knowing that it would be so prostituted, derived any
profit or advantage from renting it for such use and to
such a tenant, which he would not otherwise have enjoyed
as certainly and beneficially, he might be deemed a par-
ticeps criminis, and punishable for a misdemeanor. Such
illegal use of his house by his bailee, with his purchased
consent and virtual co-operation, would, in judgment of
law, be his act."

In Frederick v. Commonwealth, 4 B. Mon., 7, Freder-
ick was indicted for keeping a disorderly house. The evi-
dence showed that his tenant, Emily McQuown, conducted

a house of prostitution in the leased premises. In holding that the evidence was not sufficient to convict Frederick, the court said:

"In the absence of proof that the defendant was privy to or authorized the lease to Emily McQuown made by his agent, or that he was aware that she was a common prostitute, or intended to use the rooms as a bawdy house, he cannot be found guilty or aiding and abetting in keeping a bawdy house, nor in leasing to that end, within the principle settled by this court in Ross v. The Commonwealth, and during the continuance of the lease he cannot be said to have control over the rooms leased."

In Harlow v. Commonwealth, 11 Bush, 610, the indictment charged that the accused "unlawfully let, rented, hired and furnished a certain house to certain named females of lewd and lascivious habits for the purpose of being kept as a house of ill-fame, and continued to let, rent and furnish said house to said persons knowing that it was so used and that he permitted and encouraged lewd persons to meet and assemble thereat for the purpose of committing fornication and adultery;" and it was held that this sufficiently charged an offense against the lessor. To the same effect is Taylor v. Commonwealth, 1 Duv., 161.

In Commonwealth v. Morris, 129 Ky., 440, the court had under consideration an indictment found under section 2557 of the Kentucky Statutes, providing that any person who knowingly furnished or rented a house in which spiritous liquors were to be sold in violation of law should be guilty of a misdemeanor, and said:

"To sustain a conviction under this statute it is necessary that there should be some evidence direct or circumstantial conducing to show that the owner or controller of the leased property or premises knew or had such information as would put a person of ordinary prudence upon notice at or before the time the lease was entered into that it was the intention of the lessee to sell in violation of law, liquor in or upon the property or premises leased. Where the owner or controller of the property or premises furnishes or rents it in good faith to be used for legal and legitimate purposes, he cannot be subjected to a criminal prosecution under the statute because the lessee violates the law."

In Hazlewood v. Commonwealth, 141 Ky., 232, in speaking of the liability of the lessor, Moore, who was indicted for keeping a disorderly house, the court said:

"If he, at the time of leasing the storehouse to Longo, knew he would make of it a disorderly house, or, after it became such, while it was in Longo's possession, he consented to or acquiesced in such use of it, he would be equally guilty with Longo of the offense of maintaining a nuisance."

We think it clear from these authorities that the indictment was fatally defective, and it appears that the error in the indictment was followed throughout the case in the introduction of evidence and the giving of instructions.

Wherefore, the judgment is reversed, with directions to sustain the demurrer to the indictment, and for further proceedings consistent with this opinion.