**Frank Ernest ABLETT, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, Appellee.**

No. 13243.

United States Court of Appeals District of Columbia Circuit.

Argued June 12, 1956.

Decided Jan. 10, 1957.

Mr. David Carliner, with whom Mr. Jack Wasserman, Washington, D. C., was on the brief, for appellant.

Mr. John W. Kern, III, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., Mr. Lewis Carroll and Mrs. Kitty Blair Frank, Asst. U. S. Attys., were on the brief, for appellee. Messrs. Leo A. Rover, U. S. Atty., at the time record was filed, and Milton Eisenberg, Asst. U. S. Atty., also entered appearances for appellee.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

Plaintiff-appellant sought in the District Court a judgment declaring that an order of deportation issued against him is void and that he is not subject to deportation. After a trial the District Court entered judgment for the defendant-appellee, and this appeal followed.

Appellant was ordered deported (1) under Section 19 of the Immigration Act of February 5, 1917, 39 Stat. 889, as amended,* on the ground that he had

* Now Immigration and Nationality Act, 8 U.S.C.A. § 1251.

been convicted prior to entry of a crime involving moral turpitude, to wit, "keeper of a brothel," and (2) under Sections 13 and 14 of the Immigration Act of May 26, 1924, 43 Stat. 161–62,** on the ground that at the time of his last entry he was not entitled to enter the United States, since the visa he presented was procured by fraud or misrepresentation, and hence was invalid.

■ 1. Section 19 of the Immigration Act of February 5, 1917, provides *inter alia:*

"* * * any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude * * * shall, upon the warrant of the [Attorney General], be taken into custody and deported * * *."

For a conviction to warrant deportation under this section, moral turpitude must be inherent in, or an essential ingredient of, the crime. If a person not guilty of moral turpitude may nevertheless be convicted of the crime, the offense cannot be said to involve moral turpitude for purposes of Section 19, irrespective of whether or not the conduct of the particular alien whose deportation is sought was immoral.[1]

** Now Immigration and Nationality Act, 8 U.S.C.A. §§ 1181, 1251.

1. United States ex rel. Mylius v. Uhl, 2 Cir., 1914, 210 F. 860, at page 863; United States ex rel. Robinson v. Day, 2 Cir., 1931, 51 F.2d 1022; United States ex rel. Zaffarano v. Corsi, 2 Cir., 1933, 63 F.2d 757, 758; United States ex rel. Guarino v. Uhl, 2 Cir., 1939, 107 F.2d 399, 400; United States ex rel. Giglio v. Neelly, 7 Cir., 1953, 208 F.2d 337, 340–342.

2. Section 13 reads:
"13. Any person who—
"(1) keeps or manages or acts or assists in the management of a brothel, or
"(2) being the tenant, lessee, or occupier (or person in charge) of any premises, knowingly permits such premises or any part thereof to be used as a brothel or for the purposes of habitual prostitution, or

On February 11, 1939, in the Marylebone Magistrates Court, London, England, the appellant pleaded guilty to, and was convicted of, the charge of "Being the landlord of 59 Upper Berkeley Street were [sic] wilfully a party to the continued use of above as a brothel" on the date January 23, 1939, and other dates. He was fined £40, plus £21 for costs. He was not indicted but was served with a summons ordering him to appear to answer the charge. His conviction was had under Section 13(3) of the Criminal Law Amendment Act of 1885, Part II, as amended,[2] the pertinent language of which is substantially repeated in the quoted charge.

■ It can hardly be doubted that the offense of keeping a brothel involves moral turpitude.[3] Appellant indeed says as much. But whether a landlord who was "wilfully a party to the continued use" of the rented premises as a brothel is necessarily and inevitably guilty of moral turpitude is a question of real difficulty.

First, we note that Parliament appears to have equated this offense to that of keeping a brothel, making them both triable in the same way and subject to the same punishment. Clearly the part of the statute which concerns us would ap-

"(3) *being the* lessor or *landlord of any premises*, or the agent of such lessor or landlord, lets the same or any part thereof with the knowledge that such premises or some part thereof are or is to be used as a brothel, or *is wilfully a party to the continued use* of such premises or any part thereof *as a brothel,*
shall on summary conviction in the manner provided by the Summary Jurisdiction Acts be liable—
"(a) to a fine not exceeding £100 or to imprisonment with or without hard labour for a term not exceeding 3 months."
(Italics supplied.) 48 & 49 Victoria, c. 69, as amended.

3. See State ex rel. Ricco v. Biggs, 1953, 198 Or. 413, 255 P.2d 1055, 1061, 38 A.L.R.2d 720, and DeForest v. United States, 1897, 11 App.D.C. 458, at page 463, where it was noted that such a house has a tendency to subvert, debauch and corrupt public morals.

ply to the landlord who, having received notice that the leased premises are being used as a brothel, consents to this use or takes some other affirmative action to allow the premises to continue to be so used. Cf. Durose v. Wilson (1907) 21 Cox C.C. 421, 71 J.P. 263. If the statutory language would also authorize conviction of a landlord who, after being put on notice of the immoral use, merely fails through negligence or inertia to take prompt action to prevent a recurrence by giving notice to quit, if that is available to him, or otherwise, the offense must be considered not to involve moral turpitude for present purposes, under the authorities cited in footnote 1, since the requisite element of evil intent, baseness, or depravity could be lacking in conduct signifying only lassitude rather than active participation. No decision by the English Courts on this matter has been found. However, we would suppose that a landlord would not be "wilfully a party to the continued use" of the premises as a brothel, merely by reason of ownership or by acquiring knowledge that the premises have been and are being so used, unless he knowingly and intentionally [4] becomes a participant in the wrongdoing in some way, as by aiding or assisting, sharing in the profits derived therefrom, or giving his consent to the use as a brothel.[5] Cf. Blocker v. Commonwealth, 1913, 153 Ky. 304, 307–308, 155 S.W. 723, 725, 44 L.R.A.,N.S., 859; State v. Williams, 1862, 30 N.J.L. 102, 105–106. Substantiating this view is the fact that the English courts have construed the statutory language strictly, against the prosecution.[6]

Because there is some doubt as to whether the crime of which the alien here was convicted is properly to be construed as one involving moral turpitude for purposes of Section 19, we are reluctant to affirm on this ground. Cf. Fong Haw Tan v. Phelan, 1948, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433; Barber v. Gonzales, 1954, 347 U.S. 637, 642–643, 74 S.Ct. 822, 98 L.Ed. 1009. A further circumstance contributes to our reluctance. Both the warrant of arrest and the deportation order assert that appellant was convicted of the crime of "keeper of a brothel," whereas he was actually convicted of "wilfully being a party [as landlord] to the continued use" of the leased premises as a brothel. The proof and the findings therefore do not fully support the first ground for deportation specified in the deportation warrant, even though the two offenses have a close relation. The propriety of deportation on the first ground given in the existing warrant may therefore be open to question. Cf. Throumoulopolou v. United States, 1 Cir., 1925, 3 F.2d 803; United States ex rel. Iorio v. Day, 2 Cir., 1929, 34 F.2d 920, 921; Takeo Tadano v. Manney, 9 Cir., 1947, 160 F.2d 665. We find it unnecessary to decide these questions, however, in view of our disposition of the second ground given in the warrant. We now turn to that ground, namely, fraud

4. That "wilfully" may be given this meaning in criminal statutes in some contexts, see United States v. Illinois Cent. R. Co., 1938, 303 U.S. 239, 242, 58 S. Ct. 533, 82 L.Ed. 773; Townsend v. United States, 1938, 68 App.D.C. 223, 229, 95 F.2d 352, 358, certiorari denied 1938, 303 U.S. 664, 58 S.Ct. 830, 82 L. Ed. 1121; Trenton Chemical Co. v. United States, 6 Cir., 1953, 201 F.2d 776, 779–780; Johnson v. United States, 9 Cir., 1919, 260 F. 783.

5. A "party" must take part or participate (Black's Law Dictionary (4th Ed. 1951); 2 Bouv.Law Dict.Rawles, Third Revision, p. 2460; Webster's New International Dictionary (2d Ed.1949, 6th

meaning)) or must aid, abet, or assist, not merely acquiesce, in the commission of a crime. Carrico v. State, 1919, 16 Okl.Crim. 118, 180 P. 870.

6. The leading cases have involved the offenses described in Subsections (1) and (2) of Section 13 of the 1885 law. See Singleton v. Ellison (1895), 18 Cox C.C. 79; Caldwell v. Leech (1913), 23 Cox C.C. 510; Mattison v. Johnson (1916), 25 Cox C.C. 373; Siviour v. Napolitano (1930), 29 Cox C.C. 236; but cf. Winter v. Woolfe (1930), 29 Cox C.C. 214. No reported case appears to have arisen under Subsection (3), other than Durose v. Wilson, cited supra in the text of this opinion.

in the procurement of the visa on which plaintiff-appellant entered.

2. On July 17, 1951, plaintiff applied at the American Consulate in London, England, for an immigration visa to re-enter the United States. In his sworn application he stated "I have not been arrested or indicted for, or convicted of, any offense." On the basis of this application he was issued an immigration visa on the same day, and using this visa he was admitted to the United States for permanent residence at New York, New York, on July 30, 1951.

The sworn statement in the application—denying any arrests, indictments, or convictions—was false. In addition to the brothel conviction described above, the record before the appellee-defendant, and now before us, contains plaintiff's sworn testimony in which he freely admitted on questioning that he was convicted in England for petty theft in the early 1920s and served a short jail sentence.[7] Apparently, however, the charge in the deportation order of fraud in procuring the visa is based only on the failure to disclose the brothel conviction.

Under Sections 13 and 14 of the Immigration Act of 1924, 43 Stat. 161-62,[8] an immigrant must have an unexpired immigration visa in order to be entitled to enter the United States, and —at least as a general rule—if at any time after he has entered, it is found that he was not entitled to enter he is deportable. These requirements of course presuppose a valid visa. The rule is now well settled that a visa obtained by misrepresentation of a material fact, that is, a fact which under the law is relevant to the alien's admission, is not a valid visa and hence is no visa.[9]

Had the appellant revealed the brothel conviction, it is clear that the consul would have been justified in refraining from an immediate grant of the visa which was applied for and granted on July 17, 1951, and on which the appellant entered the United States. Disclosure of the conviction would have required the consul to determine whether moral turpitude was involved in the brothel case before he could have lawfully issued the visa.[10] With an offense of this nature obviously that question

---

7. His testimony also is that he was arrested for pimping in Los Angeles on May 9, 1951, but the charge was dismissed on motion for insufficient evidence; and that he was indicted about November, 1948, in Jacksonville, Florida, for a violation of the Mann Act, 18 U.S. C.A. §§ 2421–2423, but the indictment was dismissed before arraignment.

8. These sections read, so far as here pertinent:
"Sec. 13.(a). No immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa * * *.
* * * * *
"Sec. 14. Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under his Act to enter the United States * * * shall be taken into custody and deported * * *."

9. See, e. g., United States ex rel. Fink v. Reimer, 2 Cir., 1938, 96 F.2d 217; Heizaburo Hirose v. Berkshire, 9 Cir., 1934, 73 F.2d 86; Ex parte Soucek, 7 Cir., 1939, 101 F.2d 405; Daskaloff v. Zurbrick, 6 Cir., 1939, 103 F.2d 579. See also United States ex rel. Iorio v.

Day, 2 Cir., 1929, 34 F.2d 920, and United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 1938, 94 F.2d 263, holding that the visas there were valid because the alien's misstatements related to facts which would not have barred issuance of a visa.

10. If it was involved, the plaintiff would have been inadmissible under Section 3 of the 1917 Act, 39 Stat. 875 [now Immigration and Nationality Act, 8 U.S. C.A. § 1182(a) (9)], which provides:
" * * * persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude * * * shall be excluded from admission into the United States * * *."
And the Consul would have been required to refuse a visa under Section 2(f) of the 1924 Act, 43 Stat. 154 [now Immigration and Nationality Act, 8 U.S. C.A. § 1201(g)] which provides:
"No immigration visa shall be issued to an immigrant if it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that the immigrant is inadmissible to the United States under the immigration laws * * *."

could not have been investigated and a final determination reached immediately. As we have seen, the question is one of real difficulty. Further, an investigation, if it had not been thwarted by the false answer, logically would have included questioning as to other possible convictions and might well have resulted in revealing the admitted conviction for petty theft, a crime which does involve moral turpitude within the meaning of the immigration laws.[11] This would have required the consul to withhold a visa. At any rate, the applicant's concealment of the brothel conviction resulted in the acquisition of a visa on July 17, 1951, which he could not have acquired at that time, or perhaps ever, if the truth had been told. The fact that he perhaps might have obtained a visa at some later date is irrelevant here; the visa at issue is the one obtained on July 17, 1951.

We do not read United States ex rel. Iorio v. Day, 2 Cir., 1929, 34 F.2d 920, or United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 1938, 94 F.2d 263, as opposed to this view. In Iorio, the alien swore that he had never been imprisoned, whereas he had once been imprisoned in Arizona for possession of whiskey, an offense which the court pointed out was not commonly accepted as involving moral turpitude. In Leibowitz, the alien procured his visa by giving the first name and age of his brother instead of his own first name and age, because he had been using the brother's name for some years and held a passport issued under that name. Both decisions appear to be premised on the point that, if the aliens had told the truth, they would nev-

ertheless have been entitled to receive visas forthwith; certainly there is no indication that the truth would have prompted the consul to withhold a visa, pending investigation, in either case. The crime in Iorio, unlike that here, was not one which would immediately raise the question of whether moral turpitude was involved. That this is a correct reading of Iorio may be assumed from the later decision of the same court in United States ex rel. Jankowski v. Shaughnessy, 2 Cir., 1951, 186 F.2d 580, 581, which fully supports our decision here. There the alien on his visa application had concealed the fact, as the examiner found, that he had been arrested and "imprisoned or interned" in England and falsely stated that he was at sea during the period he actually was in England. In upholding the deportation order on the ground that the visa under which he entered was procured by fraud and was invalid, the court stated, at page 582:

"The misrepresentation and concealment were material. Had he disclosed those facts, they would have been enough to justify the refusal of a visa. For surely they would have led to a temporary refusal, pending a further inquiry, the results of which might well have prompted a final refusal."[12]

To the same effect, cf. United States v. Flores-Rodriguez, 2 Cir., 1956, 237 F.2d 405. Cf. also Corrado v. United States, 6 Cir., 1955, 227 F.2d 780, certiorari denied, 1956, 351 U.S. 925, 76 S.Ct. 781; and United States v. Montalbano, 3 Cir.,

---

11. United States ex rel. Ulrich v. Kellogg, 58 App.D.C. 360, 30 F.2d 984, certiorari denied sub nom. United States ex rel. Ulrich v. Stimson, 1929, 279 U.S. 868, 49 S.Ct. 482, 73 L.Ed. 1005; Pino v. Nicolls, 1 Cir., 1954, 215 F.2d 237, 245, reversed on another ground sub nom. Pino v. Landon, 1955, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239; United States ex rel. McKenzie v. Savoretti, 5 Cir., 1952, 200 F.2d 546; United States ex rel. Teper v. Miller, D.C.S.D.N.Y.1949, 87 F.Supp. 285, 286–287; Tillinghast v. Edmead, 1 Cir., 1929, 31 F.2d 81.

12. It does not appear from the Jankowski opinion, or that of the lower court, D.C. S.D.N.Y.1950, at 93 F.Supp. 7, whether the alien had been imprisoned as a result of conviction of a crime or had been interned. Nor do the opinions show what crime, if any, caused the imprisonment or what activities or conduct caused his internment. Thus, it is not clear whether the law would have required a visa finally to be refused.

1956, 236 F.2d 757, certiorari denied Genovese v. U. S., 325 U.S. 952, 1 L.Ed.2d 244.

In Clarke v. Landon, D.C.D.Mass. 1956, 139 F.Supp. 113, 115, the court stated that misrepresentations in a visa application are not grounds for deportation unless they "were prejudicial to the Government in some other sense than that they hampered a complete and full investigation." This view was thought to be required by the Iorio and Leibowitz decisions, supra, although the court noted that as a matter of first impression it might conclude otherwise. We do not think that Iorio and Leibowitz require any such holding. The Government tells us it is appealing the Clarke case. But in any event the applicant's misstatement there—that she was single when in fact she was married—did not assist in obtaining a visa that the applicant could not otherwise have had; she concededly would have been entitled to a visa, presumably without investigation, had she revealed her married state. That case is wholly unlike this one, where the applicant concealed a fact which—because it raised the question of possible inadmissibility—would have required the consul to withhold the visa which he did grant as of that date.[13] Thus, we must conclude that the plaintiff's false statement that he had never been convicted of any offense was a material misrepresentation, with the result that the visa obtained thereby on July 17, 1951, was invalid. The plaintiff was not entitled to enter the United States on the basis of that visa and he is therefore deportable under Section 14 of the 1924 Act.[14]

The judgment of the District Court is Affirmed.

13. The appellant contends that the administrative practice is not to deport aliens whose misrepresentations in applying for a visa did no more than to shut off an investigation which the consul might otherwise have made, unless the misrepresentation relates to identity. The two cases which he relies on (Antonio Guerra-Munos or Tony Guerra, A 8–948–706, and Pedro Serna-Calderon or Pedro Calderon-Serna, E–086114-New York) both involved the misrepresentation of a fact which if revealed would not have justified refusal of the visa as of that date. The administrative policy represented by these cases evidently does not extend to the instant case where disclosure of the concealed fact would have led to an immediate withholding of the visa and an investigation, and we see no compelling reason why it should be so extended.

14. In our consideration of the case, we have not overlooked Section 4 of the Act of September 3, 1954, 68 Stat. 1145–1146, 8 U.S.C.A. § 1182a. That section reads:
"Any alien who is excludable because of the conviction of a misdemeanor classifiable as a petty offense under the provisions of section 1(3) of title 18, United States Code, by reason of the punishment actually imposed, or who is excludable as one who admits the commission of such misdemeanor, may hereafter be granted a visa and admitted to the United States, if otherwise admissible: Provided, That the alien has committed only one such offense."
Although Congress framed the section to apply "hereafter," the Attorney General admittedly, as an administrative matter, has applied it retroactively so as not to deport aliens who would be deportable under prior laws on the ground of having committed before entry a misdemeanor involving moral turpitude. This policy appears to derive in part from the view that aliens already in the United States, who if they were outside and were applying for present admission would not now be excludable for a conviction before the 1954 Act, should not now be expelled. But administrative relief has not been extended retroactively to aliens deportable on the ground that they entered under a visa procured by fraud. Appellant does not urge that it should be applied administratively to exempt from deportation an alien who entered illegally on a visa invalid because of failure to disclose conviction of a misdemeanor. Only if the administrative discretion had been used to grant such relief in other cases could a question arise for review by the courts.