980 F.2d 721
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Hing Cheung WONG, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-1721.
 United States Court of Appeals,
First Circuit.
 December 8, 1992
 
 ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS
 Robert J. Napolitano, on Memorandum in Support of Motion for Stay, for petitioner.
 Stuart M. Gerson, Assistant Attorney General, Robert Kendall, Jr., Assistant Director, and Charles E. Pazar, Office of Immigration Litigation, Civil Division, Department of Justice, on Memorandum in Opposition to Motion for Stay, for respondent.
 BIA
 STAY DENIED.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Petitioner Hing Cheung Wong seeks a stay of deportation under 8 U.S.C. § 1105a(a)(3) pending our review of an order of the Board of Immigration Appeals (BIA) denying his request for discretionary waiver. On August 10, 1992, we stayed the order of deportation on a provisional basis and directed the parties to file memoranda addressing petitioner's challenges to the BIA's decision. Having now reviewed the administrative record along with the parties' memoranda, we find that the instant petition raises no serious legal question. We therefore vacate the provisional stay and deny petitioner's application for a stay pending review.
 
 I. Background
 
 2
 Petitioner is a 39-year-old native and citizen of Hong Kong who has been a legal permanent resident in the United States since 1968. The record discloses that he has committed three legal offenses since his arrival. In March 1977, he pled guilty in Maine state court to a charge of possessing less than one and one-half ounces of marijuana-a civil violation for which he was ordered to perform community service. In May 1979, he pled guilty to a charge of shoplifting and was fined $100.[1] And in August 1984, he pled guilty to the charge of acquiring scheduled drugs (codeine) by deception, for which he received a one-year suspended sentence and two years of probation.[2]
 
 
 3
 Relying on these latter two convictions, the INS in December 1985 charged petitioner with being deportable as an alien "who at any time after entry [has been] convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct...." 8 U.S.C. § 1251(a)(4) (since recodified at id. § 1251(a)(2)(A)(ii)).[3] At a hearing before an immigration judge (IJ) in March 1987, petitioner conceded his deportability under this provision and requested a discretionary waiver pursuant to 8 U.S.C. § 1182(c). Following the receipt of testimony from petitioner, his wife and his father, the IJ denied such relief as a matter of discretion, finding that the adverse factors outweighed the equities in petitioner's favor. The BIA summarily endorsed the IJ's ruling, and petitioner now seeks a stay of the order of deportation pending review in this court.
 
 II. Availability of Automatic Stay
 
 4
 The filing of a petition for review acts as an automatic stay of an order of deportation "unless the alien is convicted of an aggravated felony, in which case the [INS] shall not stay the deportation ... unless the court otherwise directs." 8 U.S.C. § 1105a(a)(3). The INS contends that petitioner's 1984 state conviction for acquiring scheduled drugs by deception constitutes an "aggravated felony." It therefore asserts that petitioner is ineligible for an automatic stay, even though the provision eliminating such stays in cases of aggravated felons was added in 1990 (six years after the conviction involved here). As petitioner has not disputed either of these points, we pause only to note that both appear supportable.
 
 
 5
 The term "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43) as, inter alia, "any drug trafficking crime as defined" in 18 U.S.C. § 924(c)(2). That provision in turn defines a "drug trafficking crime" as, inter alia, "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Under 21 U.S.C. § 843(a)(3), it is a felony "to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge." This crime is directly analogous to petitioner's 1984 state conviction. Moreover, the definition of aggravated felony goes on to read: "Such term applies to offenses described in the previous sentence whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43). The fact that petitioner's conviction occurred in state court, therefore, does not preclude a finding of aggravated felony under federal law.
 
 
 6
 The aggravated-felony provisions were introduced in 1988. See Anti-Drug Abuse Act of 1988 (ADAA), Pub. L. No. 100-690, 102 Stat. 4181. The elimination of the automatic stay for aggravated felons (along with the inclusion of state crimes in the aggravated-felony definition) was effected by the Immigration Act of 1990 (IMMACT), Pub. L. No. 101-649, 104 Stat. 4978. Some initial uncertainty arose as to the degree to which the amendment eliminating the automatic stay, see id. § 513(a), 104 Stat. 5052, was retroactive. IMMACT provided that such change was applicable to petitions for review "filed more than 60 days after the date of the enactment of this Act." Id. § 513(b). Yet this directive failed to specify when the conviction must have occurred. Noting this fact, one court held that the 1990 amendment eliminating the automatic stay for aggravated felons did not apply to persons whose convictions predated the ADAA's effective date of November 18, 1988. See Ayala-Chavez v. INS, 945 F.2d 288 (9th Cir. 1991)
 
 
 7
 In December 1991, however, new legislation amended this provision so that it would apply "to convictions entered before, on, or after" IMMACT's effective date. Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 306(a)(11), 105 Stat. 1751. This amendment "take[s] effect as if included in the enactment of the Immigration Act of 1990." Id. § 310(1), 105 Stat. 1759. Arguably, some question still remains as to whether the automatic stay is inapplicable (1) to all aggravated felony convictions, whenever they occurred, or (2) only to those occurring after November 18, 1988. See Ayala-Chavez, 945 F.2d at 293-94 (discussing two other provisions of IMMACT having similar "before, on, or after" effective dates). However, the Ninth Circuit has since held that the Technical Amendments effectively overruled its Ayala-Chavez decision, and that "a party convicted of an aggravated felony is precluded from obtaining an automatic stay of deportation, regardless of the date of conviction." Arthurs v. INS, 959 F.2d 142, 143 (9th Cir. 1992) (6/88 conviction). Other courts have agreed. See Zegarski v. INS, 965 F.2d 426, 427 (7th Cir. 1992) (per curiam) (8/86 convictions); Ignacio v. INS, 955 F.2d 295, 297-98 (5th Cir. 1992) (per curiam) (9/83 convictions). Cf. Martins v. INS, 972 F.2d 657, 659-60 (5th Cir. 1992) (per curiam) (because of 4/86 conviction, petitioner was an aggravated felon ineligible to apply for asylum). Moreover, the Arthurs case involved a state drug conviction and so held, by implication, that the 1990 amendment including state crimes within the definition of aggravated felony was also fully retroactive.[4]
 
 
 8
 Cf. United States v. Bodre, 948 F.2d 28, 32 (1st Cir. 1991) (statutes retroactively making past criminal activity a new basis for deportation have been upheld), cert. denied, 112 S. Ct. 1487 (1992). Given this caselaw, and given his failure to raise the issue, we conclude that petitioner is not entitled to an automatic stay.
 
 III. Propriety of Discretionary Stay
 
 9
 We have stated in a different context that, where denial of a stay "will utterly destroy the status quo, irreparably harming" appellant, but granting a stay "will cause relatively slight harm" to appellee, the appellant "need not show an absolute probability of success" on the merits; it is enough if "there are serious legal questions presented." Providence Journal Co. v. FBI, 595 F.2d 889, 890 (1st Cir. 1979); accord Cintron-Garcia v. Romero-Barcelo, 671 F.2d 1, 4 n.2 (1st Cir. 1982) (probability of success need not be shown "where the harm to plaintiffs is particularly severe and disproportionate"). The Fifth Circuit has suggested such a lower standard might apply in the § 1105a context, see Ignacio, 955 F.2d at 299 & n.5, and the INS here has adverted to the Providence Journal standard in its memorandum (albeit without addressing its applicability). Yet we need not decide which standard should govern, inasmuch as petitioner has failed to present a "serious legal question," let alone establish a probability of success.
 
 
 10
 In exercising its discretion whether to grant relief from deportation under 8 U.S.C. § 1182(c), the BIA "balance[s] the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." Matter of Marin, 16 I. & N. Dec. 581, 584 (BIA 1978) (quoted in Hazzard v. INS, 951 F.2d 435, 438 (1st Cir. 1991)). The IJ found that a number of factors strongly militated in petitioner's favor. He has resided in this country since age 15, for a total of 24 years. His parents, grandparents, and four siblings all reside here as well; he has no relatives in Hong Kong. He served in the Navy from September 1971 to January 1973. Petitioner married a native-born United States citizen in 1985, and the two have lived together ever since. At the time of the 1987 hearing, they had had one child together, his wife had a second child from a previous relationship who lived with them, and she was pregnant with a third. After earlier bouts of underemployment, petitioner resumed working full-time at a family restaurant in 1986 (as a food preparer); he has been the sole support for his family since that time.
 
 
 11
 Arrayed against these equities were the following adverse factors. As mentioned, petitioner was convicted of a serious drug-related crime in 1984 and two less significant offenses earlier.[5] While he received an honorable discharge from the Navy, that discharge was prompted by petitioner's use of marijuana. Although petitioner claimed to have been rehabilitated from such drug use, the IJ found otherwise. In a July 1986 report, his probation officer reported a "reluctance [on petitioner's part] to deal with substance abuse issues," elaborating as follows:
 
 
 12
 I have contacted Mr. Wong's [substance abuse] counselor, who states that Mr. Wong has made virtually no progress. Their assessment is that he is still in the denial stage, that he admits continued regular use of marihuana and that he justifies his use by insisting that it is a way of life in his culture. Of even greater concern is that Mr. Wong's reluctance to deal with substance abuse issues is apparently longstanding.... Given the problems that drug use has caused this individual to date, it is truly unfortunate that he shows no insight or willingness to change.
 
 
 13
 And at the hearing, petitioner acknowledged that he continued to use marijuana (albeit on an occasional basis). The IJ determined that, on balance, these adverse factors outweighed the equities. The BIA agreed, concluding that petitioner's "criminal record, his history of drug abuse, and his continuing disregard of the controlled substance laws of this country warrant a denial of relief as a matter of discretion."
 
 
 14
 Petitioner advances several specific challenges to this decision, none of which proves persuasive. First, he contends that the IJ accorded excessive weight to his 1977 marijuana offense, improperly regarding it as equivalent in severity to his 1984 drug conviction. Petitioner apparently draws such an inference from the simple fact that the IJ listed both of these offenses as separate adverse factors. Yet such an inference is misplaced: the IJ took full note of the suggestion that the marijuana offense involved a noncriminal violation,[6] and the record reveals no lack of understanding as to the nature of each offense. To the extent petitioner contends that the IJ abused his discretion by regarding the marijuana offense as an adverse factor at all, we likewise disagree. Notwithstanding its decriminalization in Maine, the fact remains that marijuana possession continued to be against the law-both as a civil violation under state law, see Me. Rev. Stat. Ann. tit. 22, § 2383(1), and as a criminal violation under federal law, see 21 U.S.C. § 844.[7] Accordingly, for the purpose of deciding whether discretionary relief from deportation should be granted, we think the IJ was warranted in regarding petitioner's marijuana offense as a relevant adverse factor.
 
 
 15
 In a similar vein, petitioner argues that the IJ accorded exaggerated weight to his ongoing use of marijuana. For much the same reasons just discussed, this argument likewise fails.
 
 
 16
 The IJ found that, despite its decriminalized status, petitioner's use of marijuana for at least fifteen years reflected a lack of genuine rehabilitation. Given the continued illegality of marijuana possession, we find no abuse of discretion in the IJ's consideration of such evidence. To the extent petitioner questions the IJ's conclusion as to lack of rehabilitation, we note that the probation officer's statement strongly supports that finding. Moreover, petitioner's acknowledged use of marijuana shortly before the agency hearing-some months after having been ordered to show cause why he should not be deported-reflects a certain brazenness which further reinforces the IJ's conclusion.
 
 
 17
 Finally, petitioner complains that the BIA failed to consider the absence of negative information (and the resulting inference of rehabilitation) during the five years this case was pending before the BIA. Yet, as far as the instant record reveals, petitioner filed no motion to reconsider or reopen based on any such new evidence. As such, the BIA was obviously justified in deciding the case on the basis of the original record.
 
 
 18
 In reviewing the BIA's discretionary decision to deny a waiver under § 1182(c), we consider only whether that decision was arbitrary, capricious, or an abuse of discretion. See, e.g., Martinez v. INS, 970 F.2d 973, 974 (1st Cir. 1992); Hazzard, 951 F.2d at 438. The denial will be upheld "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Williams v. INS, 773 F.2d 8, 9 (1st Cir. 1985) (quoted in Martinez, 970 F.2d at 974). For the foregoing reasons, we find that the decision here suffers from none of these defects. The agency considered all relevant factors and articulated a supportable rationale for its decision. As we find that petitioner has failed to present a serious legal question, the motion for a stay pending review is denied.
 
 
 19
 The provisional stay of deportation entered on August 10, 1992 is vacated, and petitioner's motion for a stay pending review is denied. Petitioner's motions to stay the appellate process and to continue the stay of deportation are likewise denied. Petitioner shall show cause within three weeks from the date of this decision why the instant petition should not be dismissed.
 
 
 
 [1]
 This offense, which involved the removal of a pair of sneakers from a department store, led to his conviction under Me. Rev. Stat. Ann. tit. 17-A, § 353, for "theft by unauthorized taking." Crimes in Maine are categorized, in order of decreasing severity, from Class A to Class E. The shoplifting violation was denominated a Class E offense
 
 
 [2]
 The record reveals that petitioner obtained "Tylenol # 4 with codeine" by use of a forged medical prescription. Such action violated Me. Rev. Stat. Ann. tit. 17-A, § 1108, and constituted a Class C crime
 
 
 [3]
 The INS later filed an additional charge of deportability, contending that petitioner's conviction for acquiring scheduled drugs by deception rendered him deportable under 8 U.S.C. § 1251(a)(11) (since recodified at id. § 1251(a)(2)(B)(i)). This provision applies to convictions for various controlled-substance offenses. The immigration judge, however, deemed § 1251(a)(11) inapplicable. That ruling is not part of the instant petition for review
 
 
 [4]
 That amendment (unlike the one eliminating the automatic stay) was made effective "as if included in the enactment of" the ADAA. IMMACT, § 501(b), 104 Stat. 5048
 
 
 [5]
 Petitioner, conceding deportability, has not challenged the denomination of his shoplifting offense as a "crime of moral turpitude." We note that such a characterization, while not unanimously endorsed, finds support in the caselaw of this circuit, see Pino v. Nicolls, 215 F.2d 237, 245 (1st Cir. 1954), rev'd on other grounds, 349 U.S. 901 (1955) (petty larceny of twelve golf balls); Tillinghast v. Edmead, 31 F.2d 81, 83-84 (theft of fifteen dollars), and that of other courts, see, e.g., Mattis v. INS, 774 F.2d 965, 967 (9th Cir. 1985) (shoplifting); Morasch v. INS, 363 F.2d 30, 31 (9th Cir. 1966) (petty larceny); Ablett v. Brownell, 240 F.2d 625, 630 (D.C. Cir. 1957) (petty theft). See also 3 C. Gordon & S. Mailman, Immigration Law and Procedure § 71.07[d], at 71-161 & n.306 (1992) (describing petty larceny as crime of moral turpitude, while noting criticisms of that view)
 
 
 [6]
 It is clear that petitioner's offense was not criminal in nature. Maine decriminalized the possession of up to one and one-half ounces of marijuana as of May 1, 1976. See 1975 Me. Laws c. 499, § 2383 (amending Me. Rev. Stat. Ann. tit. 22, § 2383). See also 1989 Me. Laws c. 344, § 2 (lowering the threshold to one and one-quarter ounces). Compare Me. Rev. Stat. Ann. tit. 17-A, § 1106(3) (any person in possession of more than the threshold amount is presumed to be unlawfully "furnishing" a scheduled drug). The offense to which petitioner pled guilty occurred on June 28, 1976, some two months after decriminalization took effect
 Some confusion has occurred on this point. At the agency hearing, petitioner's counsel suggested, first, that the marijuana offense was criminal in nature, then that it was a civil violation. And the government, while not addressing the issue below, erroneously asserts on appeal that decriminalization occurred subsequent to petitioner's offense. Although the IJ apparently did not confirm the date of this change in state law, he did assume arguendo that the 1976 offense was civil in nature. Any confusion on this point was thus without prejudice.
 
 
 [7]
 We note that, in the interval between the IJ's decision and that of the BIA, an increased tolerance for possession of small amounts of marijuana was likewise introduced into federal law. While such possession remains a criminal violation, the ADAA in 1988 added a provision permitting the Attorney General to seek civil rather than criminal penalties in such cases. See Pub. L. No. 100-690, 102 Stat. 4384 (codified at 21 U.S.C. § 844a). And while possession of marijuana in whatever amount formerly provided a basis for deportability, see 8 U.S.C. § 1251(a)(11) (Supp. 1989), the 1990 IMMACT exempted from that provision "a single offense involving possession for one's own use of 30 grams [approximately 1.06 ounces] or less of marijuana." Pub. L. No. 101-649, § 602(a), 104 Stat. 5080 (recodified at 8 U.S.C. § 1251(a)(2)((B)(i))
 These developments (to which petitioner has not referred) do not undermine the agency's decision here. As mentioned, his deportability was not predicated on his marijuana offense, but rather on his two other convictions. And this more lenient approach does not render marijuana possession (or use) irrelevant in the context of deciding whether discretionary relief from deportation should be awarded.